HEARD APRIL TERM, 1874.

## COHRS vs. FRASER.

In an action against 'one charged as a warehouseman, to recover the value of goods deposited for safe keeping, the answer set up as defenses: (1) A denial of the alleged bailment; (2) an allegation that the goods were destroyed by irresistible force, and without the fault of defendant; and (3) a plea of the Statute of Limitations: *Held*, That the Statute of Limitations was properly pleaded, and could not be stricken from the answer on the ground of inconsistency.

An answer under the Code may set forth as many legal defenses as were allowable under the former practice.

A motion to strike out a defense as inconsistent with other defenses alleged in the answer should be made on notice and before trial, and the practice prescribed by the 21st Rule of the Circuit Courts might well be followed in such cases.

Where goods held for safe-keeping are destroyed the Statute of Limitations begins to run from the time of the loss, or, at the latest, from the time the owner has notice of the loss, and not from the time of demand.

BEFORE GRAHAM, J., AT CHARLESTON, MARCH TERM, 1873.

This was an action by Charles H. Cohrs and H. R. Banks against John Fraser & Co. to recover the value of 1,152 bales of cotton held by the defendants for safe keeping, as alleged by plaintiffs.

The first seven paragraphs of the complaint alleged that Crane & Cadow became owners of the cotton in question in June, 1862; that it was then, or soon afterwards, deposited with Frank Hampton, at his plantation, called Woodlawn, in Richland County, near Columbia, under an agreement that, in consideration of a certain

amount or rate of storage to be paid, he would store and safely keep the said cotton in certain warehouses until called for, and then, on request, deliver the same safely to the owners; and that Frank Hampton died in May, 1863. The eighth paragraph alleged that on the 20th October, 1863, the defendants became the owners of the said plantation, and that they thereupon became bailees of the said cotton, to the owners thereof, on the same terms that the said Frank Hampton had agreed to hold the same. Other paragraphs alleged that the plaintiffs afterwards became the owners of the said cotton, with the right to demand the same, and that, in July, 1872, they demanded the said cotton of defendants, who failed and neglected to deliver the same.

The defendants, by their answers, relied upon three principal grounds of defense, as follows: (1) They denied that they agreed, as alleged in the eighth paragraph of the complaint, to store and safely keep the said cotton until the same should be called for, and to deliver the same safely at the request of the owner; (2) they alleged that on or about the 17th February, 1865, Woodlawn was entered by Federal forces under General Sherman; that they destroyed the said cotton, and all the buildings and other property on said plantation; and that the plaintiffs thus lost their said cotton by a superior and irresistible force, and without negligence or fault on the part of the defendants; (3) and by the eleventh paragraph they alleged that the cause of action did not accrue within four years before the commencement of the action.

When the case was called for trial the plaintiffs moved that the eleventh paragraph of the answers be stricken out, as being inconsistent with the rest of the answer. The motion was denied and plaintiffs excepted.

The plaintiffs then gave evidence tending to sustain the allegations of the complaint as above set forth, but no evidence showing that the defendants made any agreement, either with the plaintiffs or any one else, to keep the cotton, or to deliver it on request. The plaintiffs also proved that the cotton was burned on or about the 17th February, 1865, as stated in the answers, and they further proved that Cohrs, one of the plaintiffs, knew of the loss as early as June or July, 1865. The demand for the cotton was made by letter, dated the 19th July, 1872.

At the close of the plaintiff's evidence the Court granted an order, as follows: "The plaintiffs having closed their evidence in

the case, and it appearing to the Court that, upon the plaintiff's evidence, the Statute of Limitations is a bar to the action, it is ordered that the plaintiffs be non-suited."

The plaintiffs appealed, and now moved this Court to set aside the order for non-suit, and also renewed their motion to strike out the eleventh paragraph of the answers.

*McCrady & Son*, with whom were *Campbell & Simonton*, for appellants.

*Magrath & Lowndes*, with whom was *Memminger*, contra.

The opinion of the Court was delivered by

MOSES, C. J. The appellants seek to reverse the judgment of the Court below : First, in refusing his motion to strike out the 11th paragraph of the several answers of the respondents, as inconsistent with the defense set up therein; and, second, in ordering a non-suit, which was granted by reason of the matters of defense contained in the said paragraph. If the first motion should be granted, it will necessarily follow that the second must prevail.

While the forms of pleading heretofore existing in this State, which were those which obtained at common law, have been abolished, " and the rules by which the sufficiency of the pleadings is to be determined are those prescribed by the Code of Procedure," yet we may be permitted to look to the principles on which the science of pleading is founded to ascertain " the rules " which must regulate an answer under the Code, where it is sought, by more than one matter of defense, to defeat the complaint. Under the Statutes of Ann, C. 16, Sections 4 and 5, the defendant might, with leave of the Court, " plead as many pleas as he may think necessary." The argument of the appellants is, that the defenses made by the answers are contradictory and inconsistent. But no rule of pleading can be shown which requires that matters set up by way of defense shall be consistent with each other. On the contrary, separate defenses which cannot be reconciled may be preferred by separate pleas, for if either plea is sufficient to bar the cause of action, the plaintiff must fail, and it makes no difference whether it is to the alleged contract or trespass, or to the remedy. " The defendant may, in different pleas, plead as many different grounds of defense as may be thought necessary, though they may appear to be contradictory

or inconsistent, as in trespass not guilty, a justification, and accord and satisfaction."—1 Chit. on Plead., 542 ; Com. Dig. Pleader, E. 2. It cannot be questioned that one may plead "*non assumpsit*" and the Statute of Limitations, and yet these are plainly inconsistent, for the first denies that the defendant ever did assume, while the second implies an *assumpsit* at the same time, but not within the period limited by the statute.

The Code was not intended to restrict the mode in which a party called to answer a complaint should make his defense. On the contrary, it has rather enlarged his opportunity for setting up the various matters on which he may rely to bar the recovery sought against him. By Section 173 " the defendant may set forth by answer as many defenses and counter claims as he may have, whether they be such as have been heretofore denominated legal, or equitable, or both." In *Hollenbach* vs. *Claw*, 9 How. Pr. R., 289, it was held that a defendant was not required to admit allegations in the complaint which he might otherwise deny, simply to be allowed to set up affirmative matters of defense. He can deny the alleged assault and battery and false imprisonment, and set up a justification.—*Ib.* And he can deny speaking slanderous words charged in the complaint, and then allege that the words were spoken under such circumstances (describing them) as show that they were not slanderous.—*Ib.* *Lansing* vs. *Parker*, 9 How., 288, was an action for assault and battery. The answer set up : 1. A general denial. 2. That plaintiff committed the first assault, &c. 3. That he was in defendant's inn, making a great noise, &c.; he requested him to leave, and he refusing, they gently laid hands on him to remove him, &c. The answer was held proper. These are cases where the pleadings were under the New York Code, and the principle which they enforce can be sustained by reference to many authorities in the reports of that State, in which it originated and was first adopted.

If the answer contains a separate statement of matters sufficient to bar the plaintiff's recovery, without depending on other averments on which it also relies to defeat the action, we cannot perceive how its effect to that end can be restrained by some other part of the answer with which it may appear to be inconsistent. The question would seem to be, does it prevent a recovery ? If so, its admitted power should not be controlled in its effect by a reference to other allegations with which it possibly might not consist.

Where more than one matter of defense is set up in an answer, the sufficiency of each is to be tested by its own intrinsic force for the accomplishment of the end which it proposes.

The design contemplated by the Statute of Limitations would be much affected, if not entirely defeated, if it could prevail only when set up as the only answer to the complaint. The defendant would, in fact, be requirred to admit everything charged in the complaint before he could claim the benefit which it was intended to confer. If he had not assumed, or had not been guilty, as the case might be, he could not plead "*non-assumpsit*" or "not guilty," if he desired also to claim the benefit of the statute, because the defenses might be charged with being inconsistent. The appellants here proceed upon the assumption that the respondents confess the contract, and avoid it by alleging "the destruction of the cotton by irresistible force." But such is not, in our view, the effect of the pleadings. By the 8th paragraph of the complaint, the plaintiffs aver a bailment of the cotton undertaken by the defendants on the same terms as accepted by the said Major Hampton; and in consideration of current rates of storage in the city of Columbia, to be paid by the said owners to the defendants, they (the defendants) agree to store, and safely keep, &c., until the same should be called for, and then safely to deliver, &c. The 12th paragraph alleges a demand of the cotton and a refusal. All the answers deny the allegations contained in the said 8th paragraph, and refer the destruction of the cotton, on or about the 17th February, 1865, to superior and irresistible force in the war between the United States and the Confederate States, during the invasion and military occupation of this State, and of the plantation on which the cotton was stored. The contract set out in the complaint is specifically and expressly denied, and if the plaintiff can recover through its force, it must be by adducing on the trial proof to establish it. This, however, would not ensure a judgment for the plaintiff, unless the defense arising out of the statute should fail.

While confirming the decison of the Circuit Court, on the motion to strike out the 11th paragraph from the answers, it may not be out of place to say that a motion of that character should be made before the trial, and certainly before the opening by the plaintiff to the jury. The course pursued leads to the surprise of the defendant, and would either require him to proceed to trial at great disadvantage, or compel a continuance of the cause. The answers appear

to have been filed September, 1872, and the case called for trial in March, 1873. A different course would better harmonize with the existing practice in regard to motions, the purpose of which is to perfect the pleadings before trial. A motion to strike out a part of a defendant's answer, as inconsistent, contradictory, or for other cause, should be made after notice in a reasonable time from the filing of the answer. While not strictly within the 21st rule of the Circuit Court, the spirit and principle of that rule well applied to it, and the notice there required might well be adopted for a motion of the character now referred to.

For the proper determination of so much of the appeal as alleges error on the part of the presiding Judge, in granting the non-suit, by reason of the bar of the statute, we must assume that some cause of action, in favor of the plaintiffs, arose from the transaction between the parties in respect to the cotton. To test the correctness of the judgment of the Court, we must regard the contract set out in the complaint as sustained by the testimony. The non-suit was not for want of sufficient evidence to maintain the action, but because the evidence disclosed the fact that the cause of action accrued more than four years before the commencement of the suit. Whatever was the express or implied contract between the parties in reference to the cotton, whether it was mere naked bailment, amounting only to a deposit, or a constructive trust arising from the possession of the cotton, the respondent's obligation was to deliver it on demand. The breach assigned is not the want of proper care in the preservation of the cotton, through which it became injured or lost, but a refusal to deliver it on request.

When did the right to sue accrue ? At the moment of the breach of contract, for then the duty which it imposed was violated. If four years have elapsed from the time when the plaintiffs could have commenced their action, the statute, if interposed, must protect the defendants, for the very purpose of its enactment " was to prevent persons from being harrassed at a distant period of time after the injury complained of." In June or July, 1865, the appellants had knowledge of the destruction of the cotton, even if they were not aware how or in what manner it was destroyed. The fact of the loss of the cotton was known to them. It was impossible that it could be delivered, and if it could not be, no matter from what cause, as the only liability of the respondents was for the loss, which absolutely prevented the delivery, the cause of action

arose when it was manifest and evident that this could not be made. A demand could not change the condition of things as they then existed, for the only consequence which could have followed it must have been a refusal, induced by an inability to comply, and this was known to the appellants certainly as early as July, 1865. It would be a reflection on the proud boast of the law—that it is founded on principles of substantial right and justice—if it should require not only a formal but a useless ceremony to give efficacy to its remedies. The refusal to deliver was only the effect of the loss; it was the loss itself that gave the right of action to the appellant, if he had any. Let us test this proposition by supposing that an action had been brought just after the loss, imputing it to the want of due care on the part of the respondents. Would an answer by way of plea, averring a failure or want of demand on the part of the appellants, have barred a recovery?

The action was only maintainable on the theory that the cotton was not delivered, and if an action had been brought in July, 1865, when its loss was known to all the parties, it could not have been defeated by the mere omission of a nugatory act by the plaintiffs. The statute runs from the time of the breach of duty. "Whatever be the form of action, the breach of duty is substantially the cause of action."—*Howell* vs. *Young*, 5 B. and Cres., 259.

The principles upon which we rest our judgment have been extended to cases where the breach of contract, which gave the right of action, did not come to the knowledge of the plaintiffs until the time fixed by the statute had elapsed.—*Battley* vs. *Faulkner*, 3 B and Ald., 288; *Short* vs. *McCarthy, Ib.*, 626; *Thomas* vs. *Ervin*, Chev., 22; *Clark* vs. *Reeder*, 1 Sp., 398. They have been applied even to cases where the conversion was not only fraudulent, but concealed by the fraud of the defendant, and not discovered by the plaintiff until a time within four years of the commencement of the action.—*Miles* vs. *Berry*, 1 Hill., 296; *Clark* vs. *Reeder*, and the authorities there cited.

The appellants were informed, in July, 1865, of the destruction of the cotton. No change of the relation in which the respondent stood to all the transactions in regard to it took place after that period by any admissions or promises. Although the amount involved was of magnitude, no correspondence in relation to the matter was commenced until September, 1871. All the parties interested appeared indifferent to the pursuit of it, and in April, 1872, it was

transferred to the appellant, Cohrs, his co-appellant, Banks, retaining his interest of 10 per cent. Not until the 19th July, 1872, was any demand made by them for the delivery of the cotton. We can see no exception in the statute which can save its operation in the case, and the appeal must be dismissed. It is so accordingly ordered.

*Wright*, A. J., and *Willard*, A. J., concurred.