NICHOLS v. BRIGGS.    ·

1. So much of an answer as stated the reasons which actuated the defendant in interposing a plea of the statute of limitations, was, on motion, stricken out by the Circuit judge as irrelevant. *Held*, that in this there was no error.

2. The act of 1880 (17 *Stat.* 415), amending the code, so as to make twenty years the period of limitation of actions on contracts secured by mortgage,

had no retroactive force, and did not apply to a sealed note, which fell due in 1875.

3. Under the statute then of force such note was barred in six years, but not discharged, and a mortgage of lands given to secure the note retained its lien, and might be foreclosed at any time within twenty years of its execution.

Before COTHRAN, J., York, March, 1882.

Action by John Nichols against B. F. Briggs. The opinion states the case.

The Circuit decree was as follows:

The sole question discussed before me by the counsel engaged in the cause, and with much elaboration, may be thus stated: Can an action for foreclosure of a mortgage of real estate be maintained, where the note which it is given to secure has been barred by the statute of limitations? It cannot be questioned, since the decision of the court in *Arnold* v. *McKellar*, 9 *S. C.* 335, that the amendment to section 113 of the code (see *Lynch's Code, p.* 53), as of the 25th of November, 1873 (see A. A. of that year), notwithstanding the supposed irregularity of its ratification and the subsequent reënactment of it in the A. A. of 1875, is valid and effectual; and that sealed notes in South Carolina are subject to the statutory limitation of six years, as therein provided.

It is also true, as matter of law, that this action having been commenced in January of the present year, the statutory bar is complete, unless there be some existing cause to prevent its operation. No proof to this effect was offered upon the trial, and no suggestion of the kind was made in argument by the learned counsel for the plaintiff, who insisted, with the support of many authorities, that he was entitled to a decree of foreclosure of his mortgage, *non obstante*. The defendant's counsel, with equal zeal, as stoutly denied the plaintiff's right in this regard. The question thus presented is one of some difficulty of determination, owing to the great conflict of foreign authorities upon the subject, (to which, I am forced to express my regret, that we are becoming so much addicted,) as also on account of

the apparent absence of any direct adjudication of the matter by our own courts.

The plaintiff's counsel, with great propriety, insists that the statute of limitations does not discharge or extinguish the debt, but only takes away the remedy for enforcing the payment of it. Since the case of *Sturgess* v. *Crowninshield,* decided by the Supreme Court of the United States as far back as 1819, and reported in 4 *Wheat.* 122, and followed by numerous decisions of our own court, this doctrine may be accepted without question. He further insists, and apparently with equal confidence, that though the debt be barred, the lien of the mortgage should be enforced; and to support this proposition, cites chapters 26 and 27 of 2 *Jones Mort.,* and the numerous authorities there to be found.

Upon the other hand, the learned counsel for the defendant contends: That in South Carolina the mortgage is but an incident of the debt, deriving its vitality and perpetuity only from the debt itself, and that it cannot, in the very nature of things, survive the substance of which it is but the mere shadow; that the act of 1791, so explicit in this regard, was a departure from the English doctrine and has wrought a fundamental change in the nature and character of mortgages, and of the means of enforcing them; that our own decisions have steadily maintained this divergence; citing numerous authorities, among others, *Simons* v. *Bryce,* 10 *S. C.* 367; *Warren* v. *Raymond,* 12 *S. C.* 21; *Reeder* v. *Dargan,* 15 *S. C.* 175.

And not with unbecoming confidence does he rely upon the opinion of Dargan, Ch., in *Gibbes* v. *Holmes,* 10 *Rich. Eq.,* 487, in which that learned judge says: " If a mortgage be given to secure a simple contract debt, when the debt is barred, the mortgage is discharged. Anything that satisfies the debt discharges the mortgage." Unfortunately for the defendant, however, this is but *obiter dictum,* as the question to which this would otherwise have been decisive was not before the court. Nevertheless, as the positively expressed opinion of a very great judge in his own times—and there were giants in those days—it is entitled to great consideration. The added expression above " Anything that satisfies the debt," &c., seems to me, however,

greatly to weaken the force of the first proposition; for whatever contention there might be as to that, there never could have been a doubt as to the second, which clearly relates to satisfaction of the debt—not to any suspension or abridgment of the remedy. Satisfaction is the whole object, aim and end of the law in all things. I have ventured to say this much in the way of respectful criticism, for the reason that the expression is very positive; it was much relied on by the defendant's counsel, and if other reason be needed, it may be found in what Judge Wardlaw said under like circumstances in *Mitchell* v. *Bogan* (I believe) in venturing to differ with Judge Nott.

It might not be matter of unprofitable speculation to inquire how far this expression may have been evoked by the peculiar remedy for foreclosure, furnished by the act of 1791, which, it will be remembered, was a proceeding at law, and was bottomed upon "judgment being obtained in the Court of Common Pleas." But I forbear. It surely could never have been successfully contended in South Carolina that the right of foreclosure in equity, which became, long before the abolition of the Court of Equity, as such, the universal mode of proceeding, was absolutely dependent upon the character or quality of the bond or debt intended to be secured.

In the case of *Gillett* v. *Powell, Spears Eq.* 143, property was sold and bonds and mortgages taken for the purchase-money. Foreclosure of one of these was sought, and it was discovered that the bond had been altered in a material part and thereby made void. There was no reference in the mortgage to the bond as produced in its mutilated condition. Chancellor Harper, in delivering the circuit decree, which was affirmed on this point by the whole court, said: "But I am of opinion that the alteration of the bond does not affect the mortgage, and that it must be taken as evidence of the debt. If the mortgage alone had been taken, there can be no doubt but that it would have constituted a specialty debt. At law, it is regarded as a conveyance of the property; in equity, as evidence of the debt intended to be secured by it. * * * The defendant is estopped by his deed to deny the existence of the bond." See upon this point, in part, *McCaughrin & Co.* v. *Williams*, 15 *S. C.* 505.

Perhaps what has been already said is sufficient to show the
bent or inclination of my mind ; but in the view which I shall
now take of this case, it is not necessary or proper even that
I should make a decision of this vexed and interesting ques-
tion. It is somewhere related of King James I. of Eng-
land, who largely affected learning and the society of learned
men, that upon one occasion he summoned to his presence
the *savans* of his time and propounded to them the following
inquiry : " Why is it that a fish placed in a bowl of water
filled to the brim will not displace a particle of the contents
of the vessel ?" Many learned and scientific and highly satis-
factory replies were given by the several philosophers interro-
gated in turn, until the last of the wise men cautiously inquired,
before undertaking to account for the alleged phenomenon, if,
indeed, the fact were so ? Actual experiment showed that it
was altogether otherwise. Can it be so in this case ? Let us see :

On June 5th, 1874, the defendant made and delivered his
sealed note to the plaintiff, secured by the mortgage in question,
for the sum of $500, payable twelve months after date. On
June 5th, 1875, the note became due, and the statute began to
run. On December 24th, 1880, the legislature (17 *Stat.* 415)
amended section 113 of the code, by extending the time for
bringing actions " upon bonds or other contracts in writing,
secured by mortgage of real property," to twenty years. The
statute of limitations had operated upon the sealed note before
the court for about five and a half years, and it had still about
six months to run before the bar should be complete. What
effect did the extension have upon " the contract in writing "
secured by the mortgage here ? The answer will be found in
the case of *Wardlaw* v. *Buzzard*, 15 *Rich.* 160, and is in these
words :

" * * * Nor was it denied that the legislature might
extend the statute of limitations before the bar was complete
without impairing the obligation of the contract. In fact, its
extension gives additional vitality to the contract, and furnishes
no ground of complaint to the debtor or creditor. The debtor,
if he wishes to pay can do so ; and if the creditor desires to sue,

there is nothing in the extension to prevent him." This seems to me to be the conclusion of the whole matter.

Wherefore, it is ordered, adjudged and decreed that it be referred to the clerk of the Court of Common Pleas for the county of York, to inquire into and compute the amount due upon the demand herein sued upon; and that upon such ascertainment, that the plaintiff have judgment of foreclosure of the premises mortgaged and described in the complaint, in the usual form, for his debt, interest and costs; and that the plaintiff herein have leave to move for any further order that may be necessary to effectuate the judgment herein rendered.

*Messrs. Hart & Hart,* for appellant.

*Mr. W. B. Wilson,* contra.

February 15th, 1883. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This was an action to foreclose a mortgage upon a tract of land, executed by the defendant on June 4th, 1874, "for the better securing the payment" of his note under seal for $500, bearing date the same day, and payable one year thereafter (June 4th, 1875), with interest from date. The action was commenced January 14th, 1882, and the defense was the statute of limitations. It was insisted that from the time the note fell due, June 4th, 1875, until the action was brought, January 14th, 1882, more than six years had expired, and recovery at law on the note being barred by the statute of limitations, the defendant was not liable to the plaintiff in any way whatever, either on the note or mortgage; adding to the third paragraph of his answer a statement that he invoked the plea of the statute "in order to reïmburse himself for one-half of the Gazaway Wilson lands, of which he was fraudulently deprived by the plaintiff herein, by reason of the plaintiff taking advantage of the fact that the agreement that the plaintiff should purchase the said lands for the joint use of himself and defendant was not in writing."

The cause came on to be heard before Judge Cothran, who,

upon motion of the plaintiff's counsel, granted an order to strike out so much of paragraph three of defendant's answer as undertook to assign his motive for invoking the plea, viz.: all after the words "due and owing by defendant to plaintiff." The judge then considering the case, disallowed the plea of the statute of limitations, and gave the plaintiff a decree of foreclosure for the amount of the debt, on the ground that under the amendment of the code in 1880, enlarging the period of limitations as to "notes secured by mortgage of real property," the note in question was not barred by the statute of limitations.

From this judgment the defendant appeals to this court upon the following exceptions: " 1. His Honor erred in striking from the answer of defendant the unnumbered section following section three, it not being 'matter of right' to plaintiff that same should have been stricken out. 2. His Honor erred in not holding that this action, for foreclosure of a mortgage of real estate, cannot be maintained, the action not having been brought within six years, the time limited for its commencement after the debt matured, as evidenced by the note and by it alone. 3. His Honor erred in holding that the act of December 24th, 1880, applied to the cause of action herein. 4. His Honor erred in not adjudging that the complaint be dismissed. 5. The decree is in other respects misleading and contrary to law."

As to the first exception, in reference to the order striking out a portion of the answer as irrelevant, it is only necessary to say that matter is irrelevant when it has no substantial relation to the controversy between the parties to the action, and that the code (section 183) provides that "If irrelevant and redundant matter be inserted in a pleading, it may be stricken out on motion of any person aggrieved thereby." "An answer, otherwise good, may contain a mass of unnecessary or redundant matter, which seems only to encumber the proceedings and conceal or obscure the real issues. In such cases the plaintiff should move for an order striking out such matter as 'irrelevant.'" 2 *Wait Pr.* 437.

The other exceptions will be considered together. The old statute of limitations, made of force in this State, did not apply to bonds or other instruments under seal, but in 1870 the Code

of Civil Procedure was adopted, which, in title 2, under the head of "time of commencing civil actions," provided as follows:

"Sec. 96. The provisions of this title shall not extend to actions already commenced, or to cases where the right of action has already accrued, but the statutes now of force shall be applicable to such cases."

"Sec. 113, Subd. 2. Within twenty years, an action upon a sealed instrument." In 1873, this provision was amended by adding the words "other than notes or personal bonds for the payment of money only, whereof the period of limitations shall be as prescribed in the following section" (that is to say, six years), 15 *Stat.* 496. In 1880, the provision was again amended by changing the phraseology, as follows: "An action upon a bond or other contract in writing, secured by a mortgage of real property," so that said subdivision, with the amendments thereto, shall read as follows: "Subdivision 2. An action upon a bond or other contract in writing, secured by a mortgage of real property, an action upon a sealed instrument other than a sealed note and personal bond for the payment of money only, whereof the period of limitations shall be the same as prescribed in the following section" (six years), 17 *Stat.* 415; *Gen. Stat.* 1882, *Code*, § 111.

According to these provisions of the law, was the sealed note secured by a mortgage of real property in this case, barred by the statute of limitations, on January 14th, 1882, when these proceedings were instituted? The note fell due June 5th, 1875, while the amendment of 1873 was the law, making the limitation upon all sealed notes for the payment of money only six years; and as more than that time had elapsed before January, 1882, when the action was commenced, the note was barred by the statute, unless there was some good reason to the contrary. But it is urged that before the bar of the statute was complete, the legislature, on December 24th, 1880, passed the second amendment above referred to, which restored the twenty years as originally provided by the code, as to "an action upon a bond or other contract in writing, secured by a mortgage of real property," and that, as the note in this case was so secured, the said

second amendment included it and had the effect of extending the statute of limitations as to the note before us from six to twenty years. To this was opposed the view that, although the last amendment did change the statute as to notes secured by mortgage of real property, it was only prospective in its operation, and did not extend the period of the statute as to any contract made before the passage of the amendment.

Did the amendment include contracts in existence at the time it was passed, or should it be construed as applying only to contracts thereafter to be made? There is no doubt that the statute of limitations relates to the remedy and not to the contract itself, and that the legislature had the power, before the bar was complete, as to contracts then in existence, to extend the time necessary to complete the bar, without impairing the obligation of such contracts. The question here, however, is not whether the law-makers had such power, but whether in this case they exercised it. The general rule certainly is that "statutes are not to be construed retrospectively, or so as to have a retrospective effect, unless it shall clearly appear that it was so intended by the legislature." *Ex parte Graham*, 13 *Rich*. 277. It may be true, as stated, that statutes of limitations relate only to the remedy, and are enforced according to the *lex fori*, that is to say, according to the law of the State where the party is sued; but we do not understand that these reasons extended the rule so far as to make applicable only the law of force at the time the party is sued.

It seems that these statutes, affecting the remedy only, constitute no exception to the general rule, that laws and amendments thereof of the same State operate only upon matters which arise after their passage, unless they otherwise expressly declare. "In this country, statutes of limitations are, as a general rule, applied only to a right of action which is to commence *in futuro*, and are not retrospective in their operation. And it is a well-settled principle of law, that the courts are to give such statutes a prospective operation, where there is nothing indicating a different intention on the part of the legislature which enacted the statute." 7 *Wait Ac. & Def.* 228.

2F

The law passed in this State, in 1861, "To extend relief to debtors, and to prevent the sacrifice of property at public sales," commonly called the "stay law," and which received construction in the case of *Wardlaw* v. *Buzzard*, 15 *Rich.* 158, is no exception to the rule, but rather confirms it.    That act shows upon its face that it was the intention, indeed the very purpose of the legislature, that it should apply to contracts in existence at the time of its passage.    The fifth section was in these words: " That the operation of the statute of limitations be and the same is hereby suspended during the period in which this act is of force ;" and the Court of Errors, in their judgment, said: " There is no distinction made as to the time when the causes of action arose, and they unquestionably meant and intended to embrace all money demands.    If not intended to apply to causes of action then existing, the fifth section was unnecessary, and we cannot suppose the legislature would be guilty of the folly of passing an act suspending the operation of the statute of limitations, if intended only to apply to causes arising thereafter, when the act itself was limited to the duration of one year."    In the amendment under consideration no such intention is manifest. From its terms we are unable to say that it was clearly intended to operate retrospectively and include contracts in existence at its passage.

Besides, from the form and manner in which the amendment was inserted into the code, certain words having been added to the subdivision 2 of the section as it stood, we think the added words were intended to take their place in the context, remaining as a part of the section, and, of course, controlled by the declaration still unrepealed and standing at the head of the whole title—" The provisions of this title shall not extend to actions already commenced or to cases where the right of action has already accrued."  " When the amendment of a statute is made by declaring it shall be amended so as to read in a given way, the amendment has no retroactive force ; the new provision is to be understood as taking effect at the time the amended act would otherwise become the law."    *Potter's Dwar.* 165 ; *Cooley Const. Lim.* 461.    As the law now stands, a note secured by a mortgage of real property executed since the amendment of

1880, would not be barred in less than twenty years, but as the note in this case had been executed and was running to maturity when it was passed, we think that it must fall under and be controlled by the former amendment of 1873, and, according to its terms, being a sealed " note for the payment of money only," was barred by the statute of limitations, in January, 1882, when the action was commenced.

But the most difficult question still remains. Assuming that recovery on the note considered by itself could not be had on account of the statute of limitations, must the mortgage of real property, given to secure the same debt, also be considered as barred? The mortgage, after reciting the execution of a sealed note for $500, proceeds to declare that, " in consideration of the said debt and sum of money aforesaid, and for the better securing the payment thereof to the said John Nichols," &c. A mortgage on land is an instrument of such character as exempts it from the bar of the statute in less than twenty years, so that if it is barred in this case, it must be upon some ground growing out of its relation to the note, which imposes upon it a like fate, that the remedy, which the law afforded to recover the note being barred, must also be barred as to the mortgage.

It is certainly remarkable that this question, so far as we are informed, has never been directly decided in this State. It is true that in *Gillett* v. *Powell, Spears Eq.* 145, where a bond given to secure the debt had been altered and thereby destroyed, Chancellor Harper held that a mortgage given to secure the same debt without making any reference to the bond, was not thereby affected, but should be upheld and enforced as an independent security. It is likewise true that in the case of *Gibbes* v. *Holmes,* 10 *Rich. Eq.* 487, Chancellor Dargan said that, " It is a misapprehension, I think, to suppose that the statute of limitations has any application to this case. If it is meant to apply as a bar to the debt, it cannot prevail. If a mortgage be given to secure a simple contract debt, when the debt is barred the mortgage is discharged. Anything that satisfies or destroys the debt discharges the mortgage ;" but it is manifest from the extract itself that the point as to the effect of the statute on the mortgage was not involved in the case, and, as

we take it, had not been argued. The declaration cannot be regarded as anything more than one of those expressions which fall from a judge in the glow of argument, and are known as *obiter dicta*. We must regard the question as still open, and the duty imposed of deciding it upon general principles and such outside authorities as may appear analogous and sound.

There is no doubt that in this State the act of 1791 (except in one state of facts) destroyed the legal estate of the mortgagee, and, adopting the equity doctrine, declared that the mortgagor is the legal owner of the land and the mortgagee only a creditor, with a lien on the land for the security of his debt; but it must be kept in mind that there is a difference between the debt itself and the securities for it. The debt is one, but there may be a number of securities of different kinds, personal, real, pledge, mortgage, collaterals, &c. The note given is only evidence of the debt and one of the means of collecting it, and if there is a mortgage, that is only another security for the same debt. It is true that in the case of *Cleveland* v. *Cohrs*, 10 *S. C.* 224, it is said that "The bond represents the debt, while the mortgage is a mere security for the payment of such debt. One is the principal, the other is the mere accessory." There is nothing in this inconsistent with the views suggested. The bond, undoubtedly, is the most common assurance, and for this reason, possibly, it may be regarded as the primary security and a mortgage as cumulative, or secondary, but in no proper sense can the mortgage be regarded as a security merely for the bond, which, being only the evidence of the debt, may be displaced by substitution or lost or destroyed, leaving the mortgage as a subsisting security for the debt in a new form. *Gibbes* v. *Railroad Company*, 13 *S. C.* 253, and authorities.

"A mortgage being given as a security for a debt, the general rule is that no mere change in the mode or time of payment, nothing short of an actual payment of the debt or an express release, will operate as a discharge of the mortgage. The lien lasts as long as the debt." 1 *Hill. Mort.*, § 3. The mortgage would have been good as a security for the $500 even if the bond had never been given. As the court say in the case of *McCaughrin & Co.* v. *Williams*, 15 *S. C.* 505, "the mortgage debt exists inde-

pendently of the note—the validity of the mortgage does not depend upon the description of the debt contained in the deed, nor upon the form of the indebtedness, whether it be by note or bond or otherwise: it depends rather upon the existence of the debt it is given to secure." Or, as said by Chancellor Harper in *Gillett* v. *Powell:* "But here, as I have said, the mortgage has no reference to the bond, and I cannot consider that the party claiming under it is in a worse situation than if the bond had never been taken. If he had taken a single bill and a bond with a penalty, or a bond with and one without security, though there might have been an equity to restrain the enforcement of both, I do not see how the alteration of one could vitiate the other."

We do not understand that this doctrine, as to the different securities for the same debt, conflicts with that other as well established, that payment or anything else which reaches to the debt itself and discharges it, will at the same time discharge all the securities of every kind. We agree that anything that satisfies or discharges the debt, discharges the mortgage of course. What effect did the bar of the note by the statute of limitations have upon the debt evidenced by the note and also secured by the mortgage? It is well settled that the effect of the statute is only to take away the remedy, and not to extinguish the debt. When a security is barred the debt is not thereby necessarily discharged. *Wilson* v. *Kelly,* 16 *S. C.* 216. The rule that the discharge of the debt is a discharge of the mortgage has no application when the debt is merely discharged by the statute of limitations or a discharge in bankruptcy.

In regard to the right to enforce a mortgage lien given to secure a debt barred by the statute of limitations, there seems to be some difference of opinion in the different States, notably in California, Nevada, Texas, Nebraska, Iowa, Illinois and Kansas, but in this conflict we are content to take the general rule as laid down by Mr. Jones: "Though the debt be barred, the lien may be enforced. The fact that a debt secured by a mortgage is barred by a statute of limitations, does not necessarily, or as a general rule, extinguish the mortgage security or prevent the maintaining an action to enforce it." 2 *Jones Mort.,* § 1204 *and notes.* This is the general rule, and we see no reason founded

in principle why it should not be adopted here; indeed, it would seem to have appropriate application in this State, where the law, as it now exists, makes the statutory bar of a "bond or other contract in writing, secured by a mortgage of real property," twenty years. Although as we have held, that law in terms is not applicable to this case, yet we may fairly regard it as at least a legislative declaration that the mortgage given to secure the debt in such cases takes it out of the general· rule in regard to the bar of the statute of limitations.

The judgment of this court is that the judgment of the Circuit Court be affirmed.