9486

VIRGINIA-CAROLINA CHEMICAL CO. v. WILKINS.

(89 S. E. 659.)

1. APPEAL AND ERROR—APPEALABLE ORDERS.—An order dissolving an attachment is appealable.

2. ATTACHMENT—FRAUD—AFFIDAVITS.—The bare allegation of shipping lumber out of the State with intent to defraud creditors will not support attachment, but there must be a showing of circumstances from which the intent is reasonably inferable.

3. ATTACHMENT—FRAUD—AFFIDAVITS.—That defendant's shipping out of the State lumber he had bought of plaintiff was with fraudulent intent, authorizing attachment, is not shown by the affidavit alleging defendant's failure to pay as per contract; the delivery of all the lumber to defendant; that the whole purchase price was due, a legal conclusion; that deponent had "learned" that defendant had shipped to another place than he had said, which is hearsay, proving nothing; that defendant's residence in the locality had been short; that defendant had declared his intention to continue shipping, without first paying; and that plaintiff thought defendant had little or no financial standing.

4. APPEAL AND ERROR—MOOT QUESTIONS.—It being held on appeal from order dissolving attachment that the affidavit was insufficient, whether the attachment should have been ordered to remain in force till decision on appeal, and whether the undertaking for attachment was sufficiently signed, are moot questions.

Before MAULDIN, J., Columbia, January 1916.   Affirmed.

Action by the Virginia-Carolina Chemical Company against Van Dorn S. Wilkins, doing business under the name of Yellow Hard Pine Lumber Company. From adverse orders, plaintiff appeals.

Plaintiff's affidavit for attachment is as follows:

State of South Carolina, county of Richland. W. S. Neil, being duly sworn, deposes and says:

1. That he is an agent, to wit, the manager of the Columbia sales division of the Virginia-Carolina Chemical Company, the plaintiff in the above entitled action, and that he has personal knowledge of the various transactions between said plaintiff and defendant hereinafter stated.

2. That Van Dorn S. Wilkins, doing business under the name of Yellow Pine Hardwood Lumber Company, the defendant in said action, is justly and truly indebted to said plaintiff in the sum of two thousand one hundred thirty-four ($2,134) dollars upon the following facts, to wit: That heretofore and on or about the 11th day of November, 1915, said defendant, in the said name and style of Yellow Pine Hardwood Lumber Company, entered into an agreement, in writing, with said plaintiff, wherein and whereby said plaintiff agreed to sell and deliver to the defendant, and the defendant agreed to purchase from the plaintiff (among other things) two hundred and forty-four thousand (244,000) feet of one-inch board and scantling, the property of the plaintiff, and being then located and situated in said plaintiff's yard, in the city of Columbia, S. C., at and for the agreed price of eleven ($11.00) dollars per thousand feet. That under and pursuant to the terms of said contract said defendant was to pay the said purchase price to the plaintiff as fast as each car of said lumber should be dressed and loaded for shipment by said defendant, and it was further agreed that said defendant would commence moving said stock on his yard and would remove and ship the same within about thirty days from the date of said contract. That thereafter, and immediately

subsequent to the making of said contract, said plaintiff delivered said lumber to the defendant and the said defendant removed all of said lumber from the plaintiff's yard, in said city of Columbia, to a lumber yard, in said city, in the possession of said defendant. That after the making of said contract, and prior to this date, said defendant has loaded and shipped to points without the State of South Carolina at least three carloads of said lumber, containing in the aggregate the sum of about fifty thousand (50,000) feet. That under and pursuant to the terms of said contract the defendant is indebted to the plaintiff in the sum of five hundred and fifty ($550) dollars on account of the purchase price of said three carloads of lumber loaded and shipped as aforesaid, but that said defendant has failed and neglected to pay to the plaintiff the said sum of five hundred and fifty ($550) dollars or any part thereof. That heretofore, and on or about the 23d day of December, 1915, the above entitled action was begun by said plaintiff against said defendant by the service of a summons and complaint therein upon said defendant and that said action was brought to recover the said sum of five hundred and fifty ($550) dollars owing by the defendant to the plaintiff as aforesaid.

3. That more than thirty days have elapsed since the date of the execution of said contract, and that under and pursuant to the terms thereof the whole of the balance of said purchase price, to wit, the sum of two thousand one hundred and thirty-four ($2,134) dollars, has become due and payable, and that an amended complaint is about to be served upon the defendant in the above entitled action, setting forth the above facts and asking for damages against said defendant in the said sum of two thousand one hundred and thirty-four ($2,134) dollars, over and above and in addition to the aforesaid sum of five hundred and fifty ($550) dollars.

4. That said defendant, as deponent is informed and believes, has already removed certain of his property, to wit, the three carloads of lumber hereinbefore mentioned, and is about to remove certain other property, to wit, the balance of the lumber purchased from the plaintiff as aforesaid from the State of South Carolina, with intent to defraud his creditors. That said defendant has also assigned and disposed of certain property, to wit, said three carloads of lumber shipped as aforesaid, and is about to assign and dispose of certain other of his property, to wit, the balance of the lumber purchased from the plaintiff as aforesaid, with intent to defraud his creditors. That this deponent acted for and on behalf of said plaintiff in making said contract; that the deponent has personal knowledge of all the negotiations between the plaintiff and the defendant in connection therewith. That by the terms of said contract the said defendant was to pay for said lumber as fast as the same should be dressed and loaded for shipment by said defendant; and that said defendant further agreed to remove and ship the whole of said lumber within about thirty days subsequent to the date of the execution of said contract. That by the statement made by said defendant to this deponent, said defendant has already shipped three carloads of said lumber to points without the State of South Carolina, to wit, points in the State of Virginia, without paying the purchase price therefor, or any part thereof; nor has said defendant paid to said plaintiff any portion of the purchase price of said lumber, although the time within which said lumber was to be moved and shipped by said defendant, under and pursuant to the terms of said agreement, has elapsed. That said defendant has stated to this deponent in the course of a recent conversation had between them that he had shipped said three carloads of lumber to Bridgeport, Connecticut. That said statement was false and untrue, and that this deponent has subsequently learned that said cars of lumber were shipped to points within the

State of Virginia, and not to Bridgeport, Connecticut, as stated by defendant to this deponent. Deponent further states that said defendant has informed deponent that he expects to continue the shipment of said lumber, and this deponent verily believes that it is the purpose and intent of said defendant to continue the shipment of said lumber to points without the State of South Carolina, without paying therefor, according to the terms of his said agreement with the plaintiff. That said defendant has only resided in the city of Columbia for a short space of time; that deponent has recently made careful inquiries as to the financial standing and ability of said defendant, and has learned that the defendant is a person of little, if any, financial worth, and that if defendant is allowed to continue to ship said lumber to points without this State, the said plaintiff will be unable to recover from the defendant for the purchase price thereof.

5. That the above entitled action has already been commenced to recover the sum of five hundred and fifty ($550) dollars, as above stated, and that the summons therein has already been served upon said defendant. That an amended complaint in said action is about to be served upon the defendant, as aforesaid, setting forth a second cause of action based upon the facts hereinbefore set forth, and asking for damages against said defendant in the said sum of two thousand one hundred and thirty-four ($2,134) dollars, in addition to the sum of five hundred and fifty ($550) dollars above mentioned.

. 6. That on the 23d day of December, 1915, a warrant of attachment was issued in the above entitled action, upon the above mentioned cause of action, for five hundred and fifty ($550) dollars. That this application is for an additional writ of attachment of said defendant's property, on account of the aforesaid additional cause of action for two thousand one hundred and thirty-four ($2,134) dollars. W. S. Neil.

Sworn to and subscribed before me this 28th day of December, 1915. S. T. Pender (L. S.), Notary Public for South Carolina.

*Messrs. Barron, McKay, Frierson & Moffatt,* for appellant, submit: *Order vacating and dissolving attachment is appealable:* 31 S. C. 36; 43 S. C. 329; 42 S. C. 162; 55 S. C. 547; 58 S. C. 398; 70 S. C. 537; 47 S. C. 14; *so order refusing to dissolve:* 99 S. C. 105. *The allegations of the verified complaint, amended complaint and affidavits upon which the attachments were issued, were sufficient to uphold the attachments:* Code Civ. Proc., sec. 279; Drake Attachment (6th ed.) 70a; 31 S. C. 46; 58 S. C. 398; 99 S. C. 105. *The undertakings were properly executed on the part of the plaintiff:* 43 S. C. 329; 70 S. C. 537, 538, 539; 85 S. C. 114, 126; 73 S. C. 422. *The attachments were not improvidently issued:* 47 S. C. 14, 18. *Notice of appeal operated to stay proceedings pending appeal:* 31 S. C. 376; 58 S. C. 398; 42 S. C. 162; 55 S. C. 547; 73 S. C. 413. *Defendant is protected by the undertaking in attachment:* Code Civ. Proc. 282, 286; Drake Attachment (6th ed.), sec. 428; Am. Ann. Cas. 1913b, 180; 4 Iowa 230. *Stay on appeal:* Code Civ. Proc., sec. 395. *Right to restraining order during pendency of appeal:* 40 S. C. 430; 31 S. C. 602; 64 S. C. 162, 175; 52 S. C. 505; 72 S. C. 24; 71 S. C. 426, 431.

*Messrs. Nelson & Gettys* and *H. N. Edmunds,* for respondent, submit: *Order is not appealable:* 3 S. C. 417; 91 N. Y. 660; 115 N. Y. 459. *Attachment was improvidently issued:* 31 S. C. 453; 43 S. C. 347; 25 S. C. 461; 43 S. C. 329; 53 S. C. 12. *Affidavits uncertain and indefinite:* 25 S. C. 461; 27 S. C. 131; 31 S. C. 301; 32 S. C. 155; 31 S. C. 444. *Undertaking:* 43 S. C. 329; 31 S. C. 360; 58 S. C. 409.

July 31, 1916.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The appeal is by the plaintiff from two orders of the Circuit Judge—one dissolving an attachment, and the other refusing to stay the dissolving order until this Court could hear and decide the appeal from the first order. The plaintiff contracted with the defendant to sell him 384,000 feet of board and scantlings worth $2,684.

The contract of sale is evidenced by a letter from the defendant to the plaintiff dated November 11, 1915, hereinafter referred to. The defendant confessedly loaded and shipped out of the State three carloads of the lumber, worth $550. The defendant has paid no part of the price of the lumber.

1. The respondent's contention that the order of dissolution is not appealable is not sound. The authority relied upon (*Allen* v. *Partlow,* in 3 S. C. 417) is not conclusive. In that case the defendant was allowed to put in "special bail." If the plaintiff is entitled to the remedy by attachment, the denial of it by the Circuit Judge is the denial of a substantial right. Appeals from orders vacating an attachment have constantly been heard by this Court since the Partlow case.

2. The attachment was secured upon the ground that the defendant had shipped the three carloads of lumber and was about to ship the balance thereof out of the State "with intent to defraud his creditors."

The burden was on the plaintiff, not simply to show the shipment, but to prove by testimony facts and circumstances from which a fraudulent intent is reasonably inferable. The bare allegation of the wicked intent will not support the process of attachment; the intent must be proved by testimony. That is so well settled by numerous decisions that it may be assumed as true.

The plaintiff's testimony does not nearly prove a fraudulent intent; it only proves that the plaintiff sold to the defendant, a probably insolvent man, a large amount of lumber on a credit, and trusted to the defendant for payment. By the words of the contract the terms were these:

"All stock to be paid for as fast as each car is shipped and dressed and reloaded. To commence moving stock on yard to be removed and shipped in about 30 days."

The removal of the lumber out of the State is not a circumstance to be weighed against the defendant; the plaintiff's affidavit upon which the warrant of attachment was issued recites that:

"The defendant further agreed to remove and ship the whole of the said lumber within about 30 days subsequent to the date of the execution of the contract."

The defendant confessedly and plainly bought the lumber to remove out of the State. So the only issue of fact is, when the defendant did remove, and did not pay, has it been presumptively proven that his intent was to defraud? A critical examination of the plaintiff's affidavit, upon which the writ was issued, by no means warrants the conclusion that the defendant had a fraudulent intent in removing the. lumber. Let that affidavit, the one dated December 28, 1915, be reported.

The plaintiff relies upon eight circumstances to prove fraud, to wit: (1) The failure of the defendant to pay as per contract; (2) the delivery of all the lumber to defendant, and the removal of it from the plaintiff's yard; (3) the whole purchase price was due; (4 and 5) the shipment by the defendant out of the State of three carloads, and not to the terminus which defendant declared to the plaintiff; (6) a short residence by the defendant in Columbia; (7) defendant's declaration to plaintiff that his purpose was to continue shipments without first paying therefor; (8) the plaintiff's manager thought that defendant had little or no financial standing.

The seventh of the circumstances suggests the absence of concealment; the second suggests nothing; the third is the statement of a legal conclusion, drawn from the contract letter, and not certainly correct; the other five do not altogether warrant a conclusion that the defendant had the intent to defraud.

When the defendant dressed, reloaded, and shipped a car of lumber he was due to then pay for it, but his failure to pay by no means raised a presumption of fraud, nor did his reported lack of means.

The defendant's declaration that he had consigned the lumber to some point in Virginia, and his subsequent declaration that he had consigned it to Connecticut, may be inconsistent. But the proof does not show that either is false; the words of the plaintiff's affidavit thereabout are:

"That deponent has subsequently learned that said cars of lumber were shipped to points within the State of Virginia and not to Connecticut."

That is hearsay, and proves nothing.

We have not considered the defendant's testimony at all, but only the plaintiff's. The affidavits of the plaintiff, submitted in reply, add nothing to that made on December 28, 1915. The Circuit Judge was clearly right to hold that a *prima facie* case of fraud had not been proven by the plaintiff.

3. The appellant further contends that the Circuit Judge ought to have ordered the attachment to remain of force until it could be determined here if the order of dissolution was right, for he says if this Court should hold that the attachment was lawful, and if the officers should have in the meantime released the property, then the plaintiff's rightful security for payment will have been gone. That is a moot question; if the property which was attached has been released no judgment now can restore the status; if the property has not been released, then it must now be

released, for we hold the attachment ought not to have been issued.

Whether or not an appeal from an order of dissolution does operate to stay actual dissolution until the appeal is heard need not now to be decided, and ought not, for the facts do not make that issue.

4. There remains yet one other issue made by the appeal. The Circuit Court held that the written undertaking required by the Code to be made by the plaintiff before the issuance of the writ of attachment was not properly made. The defect alleged is that the undertaking was signed thus:

"Virginia-Carolina Chemical Company by W. S. Neil, its attorney in fact."

That also now comes to be a moot question; and it is not necessary or proper to decide whether there should have been proof that Neil was in truth the attorney in fact of the plaintiff to make the bond, for the bond goes with the writ, and we hold the writ ought not to have been issued.

The order dissolving the attachment is affirmed.