## 10859
### BANK OF ANDERSON v. BREEDIN
(111 S. E. 799)

1. BILLS AND NOTES—IN ABSENCE OF NOTICE OF DEFECTS IN DISCOUNTED NOTE, COURT PROPERLY DIRECTED VERDICT FOR PLAINTIFF.— In the absence of evidence that a bank, which discounted a note sued on by it, or its president, who, in his capacity as a real estate dealer, was advised by defendant of a proposed agreement with the payee, in consideration of whose performance the note was executed, had notice of any defect or any other notice of the completed contract than the note itself, the Court properly directed a verdict for plaintiff.

2. APPEAL AND ERROR—PROOF OF REASONABLENESS OF ATTORNEY'S FEES HELD NOT PREJUDICIAL IN SUIT ON NOTE.—In a suit on a note providing for 10 per cent. attorney's fees, proof of the reasonableness thereof was not prejudicial to defendant, even if plaintiff was not required to prove it reasonable.

Before PRINCE, J., Anderson, June, 1921. Affirmed.

Action by Bank of Anderson against C. L. Breedin. From a directed verdict for plaintiff, defendant appeals.

*Mr. L. W. Harris,* for appellant, cites: *Officer of bank had actual notice of infirmity in note before discounting it and Bank is not holder in due course:* Neg. Inst. Act., Secs. 51–59; 3 R. C. L., Secs. 271, 273, 277; 2 Pom. Eq., Secs. 597, 599, 608. *Person must take heed of rumors which would attract attention of reasonable man:* 87 S. E. 540; 14 S. C., 312; 13 S. E., 848; 8 Rich. L., 470; 2 McC., 214; 68 S. E., 1045. *Should have been submitted to*

*jury*: 104 S. E. 312; 74 S. E. 977. *Where attorney's fees are only asked for in the prayer they were improperly granted*: 101 S. E. 833; 7 Ind. 6.

*Mr. J. M. Paget,* for respondent, cites: *Knowledge of officer could not be imputed to Bank*: 105 S. C. 106. *Where suspicion not enough to discredit note*: 103 S. C. 340.

April 11, 1922.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The case contains the following statement:

"This is a suit on a note given by defendant, C. S. Breedin, to Chas. R. Moore, and alleged to have been discounted by the said Chas. R. Moore at the Bank of Anderson. Upon defendant's failure to pay same suit was instituted. At the June term of Court of Common Pleas his Honor, Judge Geo. E. Prince, directed a verdict for plaintiff for full amount asked for in the complaint. Notice of intention to appeal was duly served.

### SYNOPSIS OF COMPLAINT

"That plaintiff is a corporation duly chartered by and under the laws of South Carolina, doing a general banking business; that on February 17, 1920, the defendant executed and delivered to Chas. R. Moore his promissory note for $1,500, due 30 days from date (setting out note), with name of Chas. R. Moore indorsed on the back thereof. The note contains the provision that, if collected by suit or placed in the hands of an attorney for collection, to pay 10 per cent. attorney's fees for collection; that before the maturity of said note and for value the said Chas. R. Moore discounted same to this plaintiff, who is the legal owner and holder thereof; that same is long

past due, no part of which has been paid. Prayer was for principal, interest, and attorney's fee of 10 per cent. and costs.

### SYNOPSIS OF ANSWER

"(1) General denial; (2) denial of delivery; (3) denial of consideration; (4) failure of consideration; (5) want of consideration; (6) denial that plaintiff purchased note in open market; (7) alleged that note was made in consideration for services to be performed by Chas R. Moore in putting on a land sale for this defendant, which services were never performed; that plaintiff before it became owner of said note, if it became owner thereof, had knowledge that the services had not been performed and would not be performed; (8) that plaintiff had notice of the failure of consideration, want of consideration, nondelivery of note, or facts which would have put them upon inquiry of such matters of equity existing between the said C. S. Breedin and Chas. R. Moore, and that they cannot now be heard to say that they are purchasers for value and without notice of such equities."

At the close of the testimony the presiding Judge directed a verdict for the plaintiff. From the judgment entered on the verdict the defendant appealed.

There are two questions before us. The first is:

I. Was it error to direct a verdict for the plaintiff? It was not. The objection to the direction of the verdict was based upon the following extract from the testimony of the appellant:

"A. I told Mr. Clinkscales that I was entering into an agreement with Chas. R. Moore, of the Southern Land Auction Company, to promote the sale of a piece of Church street property that I was interested in; that Mr. Moore wanted $1,500 for expenses, which we figured on a bit, regarding the amount, as I considered it excessive;

and he was to do certain things, and that I wouldn't give him the cash because I didn't know whether he would carry out his part of the contract or not; and for that reason I didn't pay him in cash, but I would give him a note to secure my word that he would be paid if he performed his part of the agreement.   I believe that covers it."

It appears in the record that Mr. Clinkscales, the president of the plaintiff bank, was himself engaged in the real estate business, and the conversation was not held with Mr. Clinkscales as president of the bank. It further appears that the conversation was held before the appellant and Mr. Moore had completed their bargain. It further appears that the first note was rejected because it was not written on the forms prepared by the plaintiff bank.  There is no evidence that even Mr. Clinkscales had any other notice of the completed contract between the parties than the note that was discounted.  The appellant objected to the amount, and yet he did agree to the amount. He objected to payment before the work was done, and yet he did make an unconditional obligation to pay before the work was done.  There is no evidence that either Mr. Clinkscales or the bank had any notice of any defect in the note, and the only thing for his Honor to do was to direct a verdict for the plaintiff.

II. The other assignment of error is as to attorney's fees.

The note provided for it, and it appears that it was alleged in the complaint.  The amount of it was in the note.  It may be that the plaintiff was not required to prove that 10 per cent. was reasonable, unless the amount of it had been attacked; but proof that it was reasonable was certainly not prejudicial.

The judgment is affirmed.

MR. JUSTICE WATTS did not participate, on account of sickness.

MR. JUSTICE COTHRAN (concurring) : Action upon a note executed and delivered by the defendant, C. S. Breedin, to one Charles R. Moore, dated February 17, 1920, due 30 days after date, for $1,500, and 10 per cent. attorney's fees. Although the "case" and both arguments state that the note was payable "to Charles R. Moore" without words importing negotiability in the commercial sense, it appears to have been treated throughout as a negotiable promissory note, and it will be so considered in this discussion. On the day of its execution the payee, Charles R. Moore, negotiated a transfer of the note to the plaintiff bank, indorsing it in blank and receiving from the bank $1,490 in cash. The vice president and cashier of the bank, P. E. Clinkscales, handled the transaction.

The sole point at issue between the parties was whether or not the bank was a holder in due course. Upon this issue the defendant testified that he was the owner of certain real estate in the city of Anderson; that he wished to have it developed and sold; that on the day before the note was given he discussed with Clinkscales, cashier of the bank, his proposed plans; told him that he was entering into an agreement with Moore to promote the sale of the property; that Moore wanted $1,500 for expenses of surveying, blueprints, electrotyping, advertising, engagement of experts, and so forth; that he regarded the amount as excessive, and was not willing to advance the money, but was willing and would give Moore a note for $1,500 to hedge against a violation of the agreement; the note being payable at a date beyond the time at which Moore was to perform his agreement.

The next day he completed the agreement with Moore and gave him a note similar to the one in suit, except that it was made out upon a blank form of another bank. Moore attempted to discount this note with the plaintiff

bank, but they preferred to have a note made out upon their own forms.  Moore returned to Breedin and informed him of the desire of the bank, and the note in suit was executed.  Breedin was thus informed of the purpose of Moore to discount the note.

Moore immediately took it to the plaintiff bank, handling the matter with Clinkscales, the cashier, indorsed it in blank, and got the proceeds of the discount.

Clinkscales in his testimony admitted that he had a conversation with the defendant on the day before the note was given, during which they discussed the method of handling the property.

The contention of the plaintiff bank was that the conversation with Clinkscales was not participated in by him as an officer of the bank or in any wise connected with the business of the bank and substantially that, if Clinkscales had in this private interview acquired any information or was chargeable with notice of any. defect in the note or any defense thereto, such notice was not imputable to the bank.  The Circuit Judge sustained the bank's contention and directed a verdict for the full amount of principal, interest, and attorney's fees.  The defendant has appealed.

Two questions arise in the consideration of the appeal:

(1) Is the knowledge of the consideration of the note acquired by the cashier imputable to the bank?

(2) If so, does the knowledge on the part of the assignee of a negotiable note, transferred for value before maturity, that the consideration of the note is executory, affect his position as a holder in due course?

As to the first question.  Clinkscales, the cashier, was informed the day before the note was given of the condition upon which it was to be given.  It will be presumed that he had this knowledge, so recently acquired, present in his mind when the note was discounted.  Al-

though the knowledge was acquired in a casual conversation, in no wise connected with the business of the bank, and before the transaction in question was negotiated, it will under these circumstances be imputed to the bank.

In Pomeroy, Eq. Jur. (4th Ed.) § 672, it is said:

"Where the transaction in question closely follows and is intimately connected with a prior transaction in which the agent was also engaged, and in which he acquired material information, or where it is clear from the evidence that the information · obtained by the agent in a former transaction was so precise and definite that it is or must be present to his mind and memory while engaged in the second transaction, the foregoing requisite becomes inapplicable; the notice given to or information acquired by the agent in the former transaction operates as. constructive notice to the principal in the second transaction, although that principal was a complete stranger to and wholly unconnected with the prior proceeding or business."

The text is supported by cases from Alabama, Washington, California, Illinois, Circuit Court of Appeals, Colorado, Georgia, Iowa, Kansas, Maryland, Minnesota, Mississippi, New Jersey, New York, North Dakota, Oregon, Texas, Utah, and Wisconsin. The author in the same section further remarks:

"If the agent acquired the information in a former and independent transaction, then it is prima facie presumed that he does not retain it present to his mind and memory while engaged in the subsequent transaction in behalf of a principal whom it is sought to charge with notice, but this presumption may be overcome by evidence. If, therefore, it be clearly shown by the evidence that the agent did in fact retain the previously acquired information present to his mind and memory while engaged in the subsequent transaction on behalf of his principal, then all the

essential elements of the general rule are existing, and the principal is thereby charged with constructive notice. This is, it seems to me, the true rationale of the doctrine in all phases and applications, and is fairly deducible from the decided cases."

As remarked by Justice Bradley, delivering the opinion of the Court in Distilled Spirits, 11 Wall. 356, 20 L. Ed. 167:

"The question how far a purchaser is affected with notice of prior liens, trusts, or frauds, by the knowledge of his agent who effects the purchase, is one that has been much mooted in England and this country."

He points out that Lord Hardwicke in *Warwick v. Warwick,* 3 Atk. 291, thought that the rule could not be extended so far as to affect the principal by knowledge of the agent acquired previously in a different transaction, and remarks, "Supposing it to be clear that the agent still retained the knowledge so formerly acquired, it was certainly making a very nice and thin distinction," and that Lord Eldon did not approve of Lord Hardwicke's view, which has since been overruled by the Court of Exchequer Chamber and concludes:

"So that in England the doctrine now seems to be established that, if the agent, at the time of effecting a purchase, has knowledge of any prior lien, trust, or fraud affecting the property, no matter when he acquired such knowledge, his principal is affected thereby. If he acquire the knowledge when he effects the purchase, no question can arise as to his having it at that time; if he acquired it previous to the purchase, the presumption that he still retains it, and has it present to his mind, will depend on the lapse of time and other circumstances. Knowledge communicated to the principal himself he is bound to recollect, but he is not bound by knowledge communicated to his agent, unless it is present to the agent's mind at the time of effecting the purchase. Clear and satisfac-

tory proof that it was, present seems to be the only re-
striction required by the English rule as now understood.
With the qualification that the agent is at liberty to com-
municate his knowledge to his principal, it appears to us
to be a sound view of the subject."

The principle thus announced by the Supreme Court of
the United States has been approved in the following cases:
*Fidelity Co. v. Courtney,* 186 U. S. 362, 22 Sup. Ct. 833,
46 L. Ed. 1193; *American Co. v. Society,* 130. Fed. 741,
65 C. C. A. 121; in re Pease (D. C.) 129 Fed. 455;
*Gustafson v. Railroad Co.* (C. C.) 128 Fed. 85; *Bank of
Overton v. Thompson,* 118 Fed. 801, 56 C. C. A. 554;
*Schollay v. Drug Co.,* 17 Colo. App. 126, 67 Pac. 182;
*McClelland v. Saul,* 113 Iowa, 208, 84 N. W. 1035, 86
Am. St. Rep. 370; *Schwind v. Boyce,* 94 Md. 510, 51
Atl. 47; *Equitable Co. v. Sheppard,* 78 Miss. 217, 28
South. 845; *Fowler v. Randall,* 99 Mo. App. 407, 73 S.
W. 933; *Deering v. Holcomb,* 26 Wash. 588, 67 Pac.
243, 561; *Goodenough v. Warren,* 5 Sawy. 502, Fed. Cas.
No. 5534; *Brown v. Coal Co.,* 72 Fed. 101, 18 C. C. A.
444; *Louisville Co. v. R. Co.,* 75 Fed., 469, 22 C. C. A.
378; *Christie v. Sherwood,* 113 Cal. 526, 45 Pac. 821;
*Campbell v. Bank,* 22 Colo. 177, 43 Pac. 1011; *Life
Ass'n v. Farley,* 102 Ga. 720, 29 S. E. 622; *Snyder v.
Partridge,* 138 Ill. 173, 29 N. E. 851, 32 Am. St. Rep.
137; *Bank v. Hollenbeck,* 29 Minn. 322, 13 N. W. 147;
*Cox v. Pearce,* 112 N. Y. 637, 20 N. E. 566, 3 L. R.
A. 564; *Brothers v. Bank,* 84 Wis. 381, 54 N. W. 786,
36 Am. St. Rep. 935.

In Mechem on Agency, § 721, it is said:

"The law imputes to the principal, and charges him
with, all notice or knowledge relating to the subject-mat-
ter of the agency which the agent acquires or obtains while
acting as such agent and within the scope of his author-
ity, or which he may previously have acquired, and which

he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it, provided, however, that such notice or knowledge will not be imputed: (1) Where it is such as it is the agent's duty not to disclose; and (2) where the agent's relations to the subject-matter, or his previous conduct, render it certain that he will not disclose it; and (3) where the person claiming the benefit of the notice, or those whom he represents, collude with the agent to cheat or defraud the principal."

There can be no doubt as to the proposition that knowledge of a fact communicated to an agent, while he was acting for his principal, in the line or scope of his employment, is chargeable to the principal; but this is only one of several conditions under which the question arises as to imputation to the principal of the agent's knowledge. Others are as follows: (1) Where the information was communicated to the agent before his relation to the principal as such was created; (2) where the information was communicated to the agent after that relation began, but not under circumstances justifying the conclusion that he was at the time acting for his principal, in the line or scope of his employment.

Both of these contingencies are to be qualified by the further inquiry whether or not the main transaction concerning which the question becomes material was transacted in person by the agent whose previous knowledge is sought to be imputed to the principal.

It is perfectly apparent that, if the agent did not personally transact the matter under investigation, the imputation to the principal of his knowledge acquired before the agency was created or acquired afterwards, but in his private and not representative, capacity, could not with any degree of reason be insisted upon.

But it presents a very different aspect when the agent, with knowledge of the damning circumstances, acquired either before the agency began or afterwards in his private capacity, personally consummates the transaction.

"And so it is held that knowledge casually obtained by a corporate agent will not be imputed to the corporation unless the corporation acts through such agent in a matter in which the information possessed by him is pertinent." 21 R. C. L. 841; *Willard v. Denise,* 50 N. J. Eq. 482, 26 Atl. 29, 35 Am. St. Rep. 788.

In *Akers v. Rowan,* 33 S. C., 451; 12 S. E., 165; 10 L. R. A. 705, the case was not one in which the agent whose knowledge was sought to be imputed to the bank of which he was solicitor and a director had personal charge of the transaction as to which the question of notice was material. The principal ground upon which the notice to the attorney was held not imputable to the bank was that it had been acquired in a confidential manner.

In *Knobelock v. Bank,* 50 S. C. 259, 27 S. E. 962, the Court held that the knowledge of an agent while engaged in a fraud for his own benefit, in which the principal is not in any way a participant, cannot be imputed to the principal—a declaration as to which there cannot be a doubt and which has no application to the point under discussion in the case at bar.

In the case of *Farmers' Bank v. Whitehead,* 105 S. C. 100, 89 S. E. 657, the facts are meagerly reported, but it must be assumed from the statement at page 106 of the opinion (89 S. E. 659) that Ragsdale, president of the bank, had first become the personal owner of the note and then discounted it on his own account at the bank which had no notice of any defect; that, if Ragsdale did have such notice, it should not be imputed to the bank. This is entirely in accord with the rule as stated herein, for it would be unreasonable to expect Ragsdale,

who was acting in his own interest, to give the bank notice of a defect. Besides, it was held there that as a matter of fact Ragsdale had no such notice.

2. As to the second question: The information thus imputed to the bank was that the note was given in consideration of an executory contract which, in the nature of things and implied in the term "executory" had not at that time been performed, and as declared in 3 R. C. L. 1067:

"The courts universally hold that knowledge that a note was given in consideration of the executory agreement or contract of the payee, which has not been performed, will not deprive the indorsee of the character of a holder in due course, unless he also has notice of the breach of that agreement or contract."

The text is supported by an array of authorities. Especially is this doctrine applicable to a case, as this is, where the maker of the note actively assisted the payee in negotiating a discount and transfer of the note. The defendant in turning into the channels of commerce a negotiable note, and actively assisting in the launching, assumed the risk of the payee's default in his undertakings. It is not improbable that the defendant co-operated with the payee in having the note discounted in order to raise the necessary funds with which to carry out these undertakings, and the fact that he died suddenly before they could be accomplished was a misfortune which should not be visited upon the bank which with the defendant's knowledge and active participation parted with its money.