217 S.C. 464 (1950)
61 S.E.2d 41
BANK OF FORT MILL
v.
ROLLINS.
16398
Supreme Court of South Carolina.
August 24, 1950.
*465 *466 *467 Messrs. Hemphill & Hemphill, of Chester, for Appellant.
*468 Messrs. John M. Spratt, of York, and McFadden & McFadden, of Chester, for Respondent.
The order of Judge Moss follows:
The Summons and Complaint in this action were served upon defendant on February 1st, 1949. Thereafter, defendant, through his attorneys, filed his Answer to the Complaint, *469 service of which was accepted by attorneys for plaintiff, on February 21st, 1949. On the original Summons and Complaint is the notation, signed by counsel for plaintiff, that this case should be docketed on Calendars No. 1 and No. 2, which notation is dated March 1st, 1949, and it appears that the case was duly docketed.
Since the date when this case was entered upon the docket, as above stated, there have been two terms of Common Pleas Court in Chester County, but it was not disposed of at either of those terms.
Thereafter, on July 21st, 1949, attorneys for plaintiff gave Notice of Motion, to be heard before me in York, South Carolina, on July 30th, 1949, for an Order striking the Answer of defendant on the grounds that said Answer was sham, false and frivolous, intended only for delay, and constituted no defense to this action; and, further, for judgment against defendant as demanded in the Complaint, in the event that it should be adjudged that the Answer be struck and dismissed. Attorneys for defendant admitted, in writing, that this Notice of Motion had been served upon them, and that they had retained a copy of said Notice, on July 21st, 1949.
This action is thus before me on the Motion to strike the defendant's Answer, and for judgment against defendant as demanded in the Complaint, in the event that it was determinded that the Answer should be stricken out and dismissed.
At the hearing of this Motion, I had before me the original Summons and Complaint, the original Answer, the Original Notice of Motion to strike the Answer and for judgment, and the original check which is the basis for this action. Counsel for both parties presented able arguments in support of their respective positions.
The Complaint, which is verified, alleges that plaintiff is a banking corporation, chartered under the laws of South Carolina, with its principal place of business in Fort Mill, *470 South Carolina; that defendant is a resident of Chester County; that defendant executed, signed and delivered to one Thomas E. Bennett his certain check, dated November 15th, 1948, drawn on the Peoples National Bank of Chester, South Carolina, in the sum of Eight Hundred Dollars, payable to the order of said Thomas E. Bennett; that, on the following day, November 16th, 1948, Thomas E. Bennett endorsed this check in blank and delivered it to plaintiff, which thereupon paid Bennett, the payee, the sum of Eight Hundred Dollars in cash money; that, by reason of this transaction, plaintiff became a bona fide purchaser for value, a holder in due course, of this check; that thereafter, in due course, plaintiff had this check presented for payment to the Peoples National Bank of Chester, the drawee bank, but was notified by said drawee bank that payment of the check had been stopped by the drawer prior to its being presented for payment, with the result that plaintiff was not able to obtain payment of this check in the sum of Eight Hundred Dollars from the drawee bank; that plaintiff subsequently made numerous requests and demands of defendant for payment of the amount of this check, but that defendant refused to pay same; and that plaintiff is now entitled to judgment against defendant in the sum of Eight Hundred Dollars, the amount of the check, with interest thereon from November 16th, 1948, at the legal rate.
By his Answer, the defendant interposes three separate defenses to this action.
In his first defense, defendant first enters a general denial to everything not specifically admitted or affirmatively alleged; he then admits that plaintiff is a banking corporation, with its principal place of business in Fort Mill and that he is a resident of Chester County, that he signed, executed and delivered to Thomas E. Bennett a check in the sum of Eight Hundred Dollars, dated November 15th, 1948, drawn on The Peoples National Bank of Chester, Chester, S.C. payable to said Thomas E. Bennett, that defendant had been informed that Bennett cashed this check at the plaintiff bank *471 and received money or other credit therefor (which defendant did not deny), that defendant was informed and believed that this check was presented to the Peoples National Bank of Chester, which refused to pay the check pursuant to orders of defendant, and that plaintiff had demanded payment of the amount of this check of defendant, which demand was refused by defendant. In his first defense, defendant denies, on information and belief, that the check is a negotiable instrument, that plaintiff is a bona fide purchaser of same for value, a holder in due course; and further denies that he is indebted to plaintiff by reason of this check. This defense also alleges that there are certain allegations of the complaint concerning which defendant has no information, and as to which defendant demands strict proof, but it is not clear just what those allegations of the Complaint are.
In his second defense, defendant alleges that plaintiff was negligent in cashing his check for Bennett, the payee thereof, but that plaintiff should have accepted the check from Bennett for collection only, and paid him the amount thereof only after plaintiff had had it presented to the Peoples National Bank of Chester and it had been honored by said drawee bank; and that such loss as plaintiff had suffered is the result of its own negligence in cashing the check for the drawee, rather than taking it for collection only.
In his third defense, defendant alleges that he delivered this check to Thomas E. Bennett as the purchase price for a certain automobile sold by said Bennett to him; that Bennett gave defendant a bill of sale to said automobile, but that it developed that Bennett was not the owner thereof and could not give good title thereto, and that Bennett thus obtained this check from defendant by fraud and false representations; that upon learning of this fraud perpetrated upon him by Bennett, defendant notified the drawee, the Peoples National Bank of Chester, to stop payment of this check, which was done; that defendant is informed and believes that by reason of this fraud perpetrated upon him by Bennett, this check does not represent a binding obligation of defendant; *472 that the check was not a negotiable instrument; that plaintiff should have known that the check was an item for collection and subject to stop-payment orders and, by taking same from Bennett, acquired no higher or greater rights thereunder than Bennett had and, since Bennett could not recover of defendant by reason of the fraud perpetrated by him, neither can plaintiff recover of defendant.
The notice of motion to strike and for judgment is in the usual form, and bases the motion upon the grounds that the Answer is sham, false, frivolous, intended only for purposes of delay, and constitutes no defense in this action. It is directed against the Answer as a whole.
Defendant first maintains that, inasmuch as this cause had been docketed for some time prior to the Notice of Motion on which it is now before me, the motion to strike comes too late, and cannot be made at this time. The Motion is directed against an Answer, however, and the general rule with reference to motions to strike pleadings, or portions of pleadings, does not apply to Answers. In Lenhardt v. French, 68 S.C. 297, 47 S.E. 382, it was held that a motion to strike from an answer did not come too late, even when made after six terms of court and two mistrials. See, also, Cohrs v. Fraser, 5 S.C. 351; Nichols v. Briggs, 18 S.C. 473.
Therefore, it must be held that plaintiff's motion to strike was not made at too late a date, and that it should be considered by the Court.
A case very similar in facts to the one now before me is Union Guano Co. v. Garrison, 130 S.C. 404, 126 S.E. 133. The action there was upon a promissory note executed by defendants as makers and payable to the plaintiff. At the hearing of a motion to strike out the answer as sham and frivolous, and for judgment for plaintiff, in open court, after reading the pleadings, motion papers, inspecting the original note sued upon, and hearing argument of counsel, His Honor, Judge Dennis, granted the *473 motion and rendered judgment. Upon appeal therefrom to the Supreme Court, the general doctrine was stated, 126 S.E. 134: "The motion to strike out as sham presented a question of fact to be determined by the court upon affidavits, or in such manner as the court may direct"; citing Tharin v. Seabrook, 6 S.C. 113; Germofert Co. v. Castles, 97 S.C. 389, 81 S.E. 665; Bank of Johnston v. Fripp, 101 S.C. 185, 85 S.E. 1070; Interstate Chemical Co. v. Farmington, 100 S.C. 196, 84 S.E. 710.
The instant case differs from that above cited in that here a check is the basis of the action, there it was a promissory note; here the action is brought by an endorsee, there it was brought by the original payee. However, the rules governing the determination of the questions at issue are practically identical in this case with those applicable in the Union Guano Company case, supra. Here, as there, the motion to strike presents a question to be determined by me in such manner as may appear proper; and, as heretofore stated, I had before me, when hearing the motion, the Complaint, the Answer, the Motion papers, and the check upon which the suit is based. In that respect, the controlling factors here appear to be practically identical with those in the Union Guano Company case, above referred to.
The Complaint alleges that defendant made, executed and delivered to Thomas E. Bennett his check, drawn on the Peoples National Bank of Chester, S.C. dated November 15, 1948, payable to the Order of said Thomas E. Bennett, in the sum of Eight Hundred ($800.00) Dollars, and signed by defendant. The Answer admits that defendant signed, executed and delivered to Thomas E. Bennett a check for a bill of sale of an automobile, dated November 15, 1948, drawn on the Peoples National Bank of Chester, S.C. in the sum of Eight Hundred ($800.00) Dollars, payable to said Thomas E. Bennett, and further admits that defendant has been informed that Thomas E. Bennett cashed this check at plaintiff bank and received money or credit for it. Both Complaint and Answer are in agreement, therefore, *474 that defendant signed, executed and delivered to one Thomas E. Bennett his check in the sum of Eight Hundred ($800.00) Dollars on November 15th, 1948, and that Bennett, the payee, transferred this check to plaintiff bank for valuable consideration.
An inspection of the check shows that it is written on a printed form of The Peoples National Bank of Chester indicating it to be a counter check. In proper sequence, its execution is as follows: "Chester, S.C. 11-15-1948. No.... . The Peoples National Bank of Chester, 67-126/532. Pay to the Order of Thomas E. Bennett. $800.00 Eight Hundred Dollars. (signed) P.T. Rollins". At the lower left are the printed words, "Counter Check", and beneath them are the written words "1941 Ford Coach".
Across the face of this check are written in red ink, the words "Payment stopped by Drawer".
On the back of the check is the name "Thomas E. Bennett", in handwriting; and stamped notations thereon show that it was received by plaintiff bank on November 16, 1948, was then put in process of collection through the Peoples National Bank of Rock Hill, S.C. the Charlotte Branch of the Federal Reserve Bank of Richmond, reaching that branch on November 18, 1948, and was returned unpaid on November 20, 1948. That is all the pertinent information which the check itself reveals.
Since both plaintiff and defendant agree that defendant signed, executed and delivered to one Bennett a certain check, particularly described and identified, the first question which arises is, what is a check, legally speaking.
The Negotiable Instruments Law is contained in Vol. 3, Title 35, Article 3 of the Code of 1942, and Section 6936 thereof defines a check as "a bill of exchange drawn on a bank payable on demand". That section further provides that "Except as herein otherwise provided, the provisions of this article applicable to a bill of exchange payable on demand apply to a check". Since a check is defined as a bill *475 of exchange, it is necessary to ascertain what such instrument is; and Section 6877 of the Code of 1942 defines a bill of exchange as follows: "A Bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer."
Now, while defendant admits that he signed, executed and delivered to Thomas E. Bennett his check, dated November 15th, 1948, in the sum of Eight Hundred ($800.00) Dollars, drawn on The Peoples National Bank of Chester, he denies liability to plaintiff by reason of that check on several grounds, although acknowledging that he "has been informed that Thomas E. Bennett did cash said check at Plaintiff Bank and received money or credit therefor". Since the motion to strike out and for judgment is addressed to the Answer in its entirety, each defense interposed to the claim of plaintiff must be considered and, if any one or more of these defenses are valid, if established by competent evidence then the motion should be denied. While the Answer sets up three separate defenses, the various defenses contained in the Answer as a whole will be considered, without reference to whether they are included in the First, Second, or Third Defense constituting the Answer.
By way of defense to this action, the Answer alleges:
(1) That the check signed, executed and delivered by defendant to Thomas E. Bennett, and by said Bennett cashed at plaintiff bank, is not a negotiable instrument.
(2) That plaintiff is not a bona fide purchaser for value, a holder in due course, of the check in question.
(3) That any loss which plaintiff may have suffered was due to its own negligence in cashing the check for Bennett upon his endorsing it in blank and delivering it to plaintiff; whereas, since plaintiff knew that this check, like any other check, was subject to stop-payment orders by the drawer, *476 it should not have paid Bennett the amount of the check upon his endorsing it in blank and delivering it to plaintiff, but should have taken it as an item for collection only, and paid Bennett nothing until the check had been honored by the drawee bank and plaintiff had received the funds represented by the check.
(4) That defendant signed, executed and delivered to Bennett this check in payment of the purchase priec of a certain automobile sold by Bennett to defendant, Bennett representing that he was conveying good title in said automobile to defendant when, as a matter of fact, Bennett did not own the automobile and could not convey good title thereto, so that Bennett obtained the check from defendant by fraud and false pretenses; so that, inasmuch as defendant has a good defense to any action on this check brought against him by Bennett, he has the same defense in any action on this check brought against him by plaintiff, plaintiff not being in any better position than Bennett insofar as enforcing collection of the check sued on is concerned.
These defenses will be considered in the order in which they are stated above.
The first defense considered is that the instrument sued on, the check, is not a negotiable instrument. While this defense is interposed in so many words, a careful reading and study of the Answer fails to disclose any reason stated or alleged as to why it is not a negotiable instrument; consequently, an examination of the check is necessary to determine whether it is, or is not a negotiable instrument. This is a question of law, to be determined from the instrument itself.
Section 6752, Code of 1942, is as follows: "An instrument to be negotiable must conform to the following requirements (1) It must be in writing and signed by the maker or drawer; (2) Must contain an unconditional promise or order to pay a sum certain in money; (3) Must be payable on demand, or at a fixed or determinable *477 future time; (4) Must be payable to order or to bearer; and (5) Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty".
The check upon which this action was brought is in writing and was signed by defendant, admittedly, so the first requirement above stated is met; it contains an unconditional order to pay the sum of Eight Hundred ($800.00) Dollars, so the second of the above requirements is met; it is payable to the Order of Thomas E. Bennett, so the fourth requirement above stated is met; and it is addressed to a drawee, who is named therein with certainty, being the Peoples National Bank of Chester, so that the fifth requirement is complied with. Insofar as the third requirement of Section 6752 is concerned, no time for payment is stated in the check. In such case, it becomes a demand instrument, for Section 6758 of the Code of 1942 provides that "An instrument is payable on demand * * * (2) In which no time for payment is expressed". Thus, the third requirement of Section 6752 is met; the result being that all the necessary characteristics of a negotiable instrument are found in the check which is the basis for this action. The instrument itself shows that it is just what both Complaint and Answer state it to be  a check  which the Negotiable Instruments Law defines as a bill of exchange drawn on a bank payable on demand.
The notation on the check "1941 Ford Coach" cannot be construed to affect the negotiable character of this instrument for, even if construed as a statement of the consideration for which the check was given, which is the construction most favorable to defendant, Home Bank & Trust Company v. Davis, 134 S.C. 508, 133 S.E. 467, clearly enunciates the doctrine that "the statement of the consideration of a note does not affect its negotiability". See, also, Bank of Anderson v. Breedin, 119 S.C. 39, 111 S.E. 799.
As a matter of law, this check is a negotiable instrument, and I so hold.
*478 The second defense interposed against this action is that plaintiff is not a holder in due course, a bona fide purchaser for value. The Answer admits that defendant has been informed that Bennett cashed this check at plaintiff bank and received money or credit therefor, and nowhere in the Answer is there any denial that Bennett endorsed the check in blank and delivered it to plaintiff, receiving the sum of Eight Hundred ($800.00) Dollars in cash money therefor, as alleged in the Complaint. The check itself contains the name "Thomas E. Bennett" written on the back of it, without any designated endorsee. This constitutes an endorsement in blank and, under Section 6785 of the Code of 1942, "an instrument so endorsed is payable to bearer, and may be negotiated by delivery". Plaintiff having had delivered to it by the payee a check, endorsed in blank to it by the payee, and having parted with Eight Hundred ($800.00) Dollars in consideration of the check's being delivered to it, are there any alleged facts that plaintiff knew of any defects or infirmities in payee's title to the check? The Answer alleges that plaintiff knew that the check was subject to stop-payment order by the drawer and consequently, should not have paid Bennett cash money for the check, but should have taken it as an item for collection only, and paid Bennett the money the check represented only after plaintiff had collected such sum from the drawee bank. However, nowhere is it alleged that plaintiff had any knowledge that payment would be stopped on this particular check, so that, if the fact that payment on this check could be stopped by the drawer renders it a non-negotiable instrument, it necessarily follows that no check can ever be a negotiable instrument, legally speaking. Such is not the established law of this State. Also, the Answer alleges that Bennett obtained this check of defendant by fraud and false pretenses, in that he represented that he was conveying good title to an automobile to defendant, whereas he did not own title thereto. But the answer contains no allegation that plaintiff knew that Bennett had obtained the check of defendant by fraud, and *479 alleges no facts known to plaintiff of such nature as to be calculated to excite a suspicion in plaintiff that Bennett had obtained this check from defendant by fraud, and that defendant had a good defense to any action that Bennett, the payee, might bring against him as drawer of the check. And the general rule in this State is that there must be more than a mere suspicion or inference of some defect in the title of the payee or subsequent endorser to prevent a later holder for value from being a holder in due course. As stated in Patterson v. Orangeburg Fertilizer Company, 117 S.C. 140, 108 S.E. 401, it is the established rule that mere knowledge of facts sufficient to put a prudent man on inquiry without actual knowledge, or mere suspicion of an infirmity or defect of title, does not preclude the transferee of a note from occupying the position of a holder in due course, unless the circumstances or suspicion are so cogent and obvious that to remain passive would amount to bad faith.
Section 6803, Code of 1942, defines a holder in due course as: "a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) That he took it in good faith and for value; (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it".
Also pertinent is Section 6804, which provides that "Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course". In this case, the undisputed facts are that plaintiff cashed this check for Bennett on November 16th, 1949, the day after its issuance bp defendant, so there is no unreasonable delay in negotiating the check which would, of itself, prevent plaintiff from being a holder in due course.
The Negotiable Instruments Law also defines what notice of infirmity will prevent one from being a holder in due *480 course, where it states, Section 6807, Code of 1942: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."
In Bolton v. Wharton, 163 S.C. 242, 161 S.E. 454, 86 A.L.R. 1101, a bona fide holder of a negotiable note is defined as "a second or other subsequent holder, not the payee, who takes it for value in good faith before maturity and without notice of defects".
Nowhere in the Answer is there any allegation or imputation that plaintiff had knowledge that Bennett had procured the check of defendant by fraud, or that it had knowledge of facts that would indicate any defect or infirmity in Bennett's title to the check. On the other hand, the uncontradicted facts are that the check was regular on its face, that it was dated November 15, 1948, that the payee endorsed it in blank and delivered it to plaintiff on November 16, 1948, that plaintiff paid Bennett Eight Hundred ($800.00) Dollars, the amount in which the check was drawn, upon its receiving the check from him, and transmitted the check to the drawee bank to obtain payment of it without delay.
Under the facts and the law applicable thereto, plaintiff is a holder in due course of the check, and I so hold.
It is significant that, while the answer denies that the check is a negotiable instrument, and also denies that plaintiff is a holder in due course thereof, it contains no statement or allegation as to why it is not a negotiable instrument or why plaintiff is not a holder in due course. Such denials, without any allegations of facts upon which the denials might be supported, are nothing more than denials of legal conclusions. Union Guano Co. v. Garrison, supra.
*481 The third and fourth defenses set up in the Answer, as above stated, are that plaintiff knew that this check, as is the case with any check, was subject to stop-payment order to the drawee bank by defendant, the maker; and that, since defendant, the maker of the check, had a good defense against the payee of the check, Bennett, such defense was equally as good against plaintiff, and available to defendant against plaintiff, in this action.
Undoubtedly, defendant had the right to order the drawee bank to decline to honor, or pay, the check he had given, but what was his position after the drawee bank refused to pay it, pursuant to his orders? Section 6811, Code of 1942, provides as follows: "The maker of a negotiable instrument by making it, engages that he will pay it according to its tenor; and admits the existence of the payee and his then capacity to endorse." As stated in 8 Am. Jur., Bills and Notes, par. 518, p. 234, his liability on the instrument is primary and unconditional until payment. He remains the ultimate debtor, the person who ought to pay the debt, in preference to, and in exoneration of, all the other parties to the paper, who in some form or other are entitled to have final recourse to him.
Then, having determined that plaintiff is a holder in due course of the check, Section 6808 of the Code of 1942, becomes applicable, and it is as follows: "A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon".
Such being the statute, it is clear that, regardless of the rights of defendant and Bennett as between themselves, with respect to which this action is not concerned, plaintiff is a holder in due course for value of the check, a negotiable instrument, admittedly signed, executed and delivered by defendant, and holds same free of any defenses which defendant may have against Bennett, the payee. No facts are *482 alleged in the answer which even infer that plaintiff knew, or was in possession of any information by reason of which it should have known, that Bennett had obtained the check from defendant by fraud or false pretenses; and, as a matter of law, the fact that this check, as is true of all checks, was subject to stop-payment instructions by the defendant drawer cannot avail defendant as a valid defense in the present action. A contrary holding would have the practical effect of rendering every check, in effect, a non-negotiable instrument.
For the foregoing reasons, therefore, the motion of plaintiff to strike out and dismiss the Answer should be granted.
Upon the answer being struck out and dismissed, it necessarily follows that plaintiff is entitled to judgment against defendant, which should be awarded on the motion before me. Powell v. Easley, 213 S.C. 574, 50 S.E. (2d) 921; Union Guano Co. v. Garrison, supra; Interstate Chemical Corporation v. Farmington Corporation, 100 S.C. 196, 84 S.E. 710; and Burkhalter v. Townsend, 139 S.C. 324, 138 S.E. 34.
The check represents a liquidated amount, and plaintiff is entitled to recover of defendant the amount of same, Eight Hundred ($800.00) Dollars. Being a liquidated demand, plaintiff is also entitled to recover interest thereon at the legal rate, six per cent, from the date plaintiff should have received payment of the check. While the Complaint alleges that plaintiff is entitled to, and demands, interest on the principal sum from November 16, 1948, the date upon which it cashed the check for Bennett, the payee, the evidence shows that, in due course of business, plaintiff would not have been paid the amount of the check until November 20, 1948. Consequently, interest on the principal sum should commence on November 20, 1948.
By reason of the above facts and laws applicable thereto, it is
Ordered that the motion to strike out and dismiss the Answer in the above action be, and the same hereby is *483 granted; and that the Answer of defendant be, and the same hereby is, struck out, set aside and dismissed.
Further ordered that plaintiff herein be, and it hereby is awarded judgment against defendant in the sum of Eight Hundred ($800.00) Dollars, with interest on said sum at the rate of six per cent from and since November 20, 1948, and, in addition thereto, the costs of this action.
And it is so ordered.
August 24, 1950.
Per Curiam.
The order of Honorable Joseph R. Moss has been carefully considered in the light of the record and the exceptions, and we find no error.
Let the order be reported as the judgment of this Court.