### No. 8695.

### Orleans Appeal.

---

## HAMMOND STATE BANK v. PERRIN AND PIERREPONT, Appellants.

---

(November 3, 1924, Opinion and Decree.)
(December 1, 1924. Rehearing Refused. [Dissent]).
(January 7, 1925. Decree of Supreme Court Writ of Certiorari and Review Refused.)

---

*(Syllabus by the Court.)*

1.  **Louisiana Digest, Bills and Notes, Par. 116.**

Holders of checks in due course, whether as owners, pledgees, or otherwise, who have acquired possession of the same within a reasonable time after their issuance for a valuable consideration, are not bound by equities between the drawers and the payees.

2.  **Louisiana Digest, Bills and Notes, Par. 116.**

A check dated New Orleans, August 4th, mailed to a payee in Hammond and by him transferred on August 10th is within a reasonable time.

Appeal from Civil District Court, Hon. Porter Parker, Judge.

This is a suit upon a check. Judgment for plaintiff and defendant appealed.

Judgment affirmed.

A. W. Spillar (Hammond, La.), attorney for plaintiff and appellee.

W. Catesby Jones, attorney for defendant and appellant.

CLAIBORNE, J. This is a suit upon a check of One Hundred and Fifty Dollars drawn by the defendants upon the Hibernia

Bank to the order of Walter A. Hurst, dated August 4, 1920, and endorsed: "For deposit"; signed "Walter A. Hurst".

The plaintiff alleged that on August 10, 1920, Hurst presented said check to plaintiff and requested payment of same, when plaintiff paid the same; that plaintiff then demanded payment of said check from the Hibernia Bank, which refused to pay the same for the reason that the drawers of said check, defendants herein, had stopped payment of the same. Plaintiff alleges that it is "a holder in due course" and as such entitled to judgment *in solido* against the defendants and they pray for judgment against them accordingly.

The defendants denied all the substantial allegations of the petition and averred: That on August 6, 1920, Walter A Hurst stated to them that their check to him dated August 4, 1920, had been lost; that thereupon they delivered to him their check dated August 6 on the Hibernia Bank for $150 in full payment of all indebtedness to him, which was endorsed by Hurst and cashed by the Western Union Telegraph Company; that they at once notified the Hibernia Bank to stop payment of their check of August 4, 1920, payable to Hurst, as he had been paid in full; that it was only on August 10th that plaintiff cashed the defendant's check dated August 4th, which was an unreasonable time after the issuance of the check.

There was judgment for plaintiff and defendants have appealed.

Of course, if the plaintiff is a "holder in due course" the judgment in its favor must be affirmed.

Sec. 52 of Act 64 of 1904, p. 155, reads as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1st. That it is complete and regular upon its face;

"2nd. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3rd. That he took it in good faith and for value;

"4th. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." 8 C. J. 464, S. 684.

Sec. 57 of the Negotiable Instrument Act, p. 156, provides that:

"Sec. 57: A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

The plaintiff satisfies all the requirements of the law.

It is not necessary in order to be a holder in due course, that one should have acquired the instrument "as owner". Any holder having advanced money on the faith of the instrument as purchaser, pledgee or creditor, or who has otherwise acquired rights to or upon the instrument, is "a holder in due course."

A pledgee is as much a holder in due course as a purchaser and owner.

In King vs. Gayoso, 8 N. S. 373, decided in 1830, the court said:

"It is a general principle of commercial law that the maker of a note, payable to order, engages to pay its amount to the innocent endorsee, who took it in the usual course of business, for a valuable consideration, whatever claim the maker may have against the payee, and we are ignorant of any exception to the rule, in favor of a pledgee.

"The only difference in the commercial law, between the absolute holder for value

and the party who takes the note as collateral security for money advanced, so far as the right of recourse against the maker is concerned, seems to be this: That the former may recover in full, and the latter, if there be equities, is restricted to the extent of his advances. In other words, he is considered as a bona-fide purchaser *pro tanto*". Matthews, Finley & Co. vs. Rutherford, 7 La. Ann. 227, C. C. 3170; President, Etc., of Louisiana State Bank vs. Gaiennie, 21 La. Ann. 556; Mallard vs. Aillet, 6 La. Ann. 93; R. A. Nott vs. Watson, 11 La. Ann. 664; Succession of Kugler, 23 La. Ann. 456; W. C. Broadwell vs. P. M. Kelly, 14 La. Florat vs. Marchand, 26 La. Ann. 741; Mechanics' Building Assn. vs. Ferguson, 29 La. Ann. 549; Saloy vs. Hibernia Nat. Bank, Ann. 456; Jones vs. Byrne, 16 La. Ann. 202; 39 La. Ann. 91, 1 South. 657.

The facts of this case are extremely simple.

The defendants owed Hurst money, and upon August 4th, at his request, they mailed him the check sued on for $150; on August 6th Hurst represented to the defendants that he had not received their check, that he was in urgent need of money, and requested them to send him $150 without delay. This the defendants did by another check to Hurst for $150, dated August 6th. They thereupon stopped the payment of the first check for $150, dated August 4th, which is the check sued on. But on August 10th Hurst was in possession of the check of August 4th and proceeded to plaintiff bank, and there requested them to cash the check. The cashier of the bank thus states what occurred:

"I would like to state that the credit of W. A. Hurst was not good, and there were instructions given that W. A. Hurst's account was not to be overdrawn under any circumstances.

"He presented this check for payment to the teller, and it was handed to me to pass on. I knew Mr. Perrin, this firm that drew the check; I had reason to believe that they were responsible, and I told the teller to pay the check. It was paid."

The whole transaction is thus explained to be an advance of money by the bank to Hurst on the credit of this check.

The Cashier used the expression "paid", but he did not use the word in its legal sense. He did not intend to pay the check which was not drawn on his bank, nor to extinguish the check in its legal aspect. All he meant and all he did, was to pay to Hurst the amount of the check on the faith and credit of the check, and to keep the check "for deposit" to the credit of Hurst's account and for collection as security to reimburse itself the amount advanced to Hurst.

The test of the question whether the plaintiff took the check merely as a deposit or also as security for cashing it, is: Would the bank have advanced the amount of the check if it had not held it for collection? With the knowledge that the bank had that Hurst's credit was not good and that he could not overdraw it is evident that it would not have done so.

"In the case of Rosanquet vs. Dudmans, Lord Ellenborough held, that a banker might resort to bills deposited with him by a customer who had overdrawn and that the right of the former, on such bills, could be extinguished by payment only." King vs. Gayoso, 8 N. S. 374.

"The reports and commentators abound in authorities to the effect that the bona fide holder will be protected against such equities where he has taken the note as security for advances made upon its credit." Matthews, Finley & Co. vs. Rutherford, 7 La. Ann. 226.

"Where a check is deposited in a bank by a customer indorsed for deposit the bank is a bona fide holder of a negotiable instrument for value without notice of any fact which would invalidate the title of the indorsers from whom they obtained it and all commercial principles and usages

require that such a title should be protected." 3 Words and Phrases, 2864.

"A bank taking a note before maturity as collateral security for money loaned becomes the holder in good faith for a valuable consideration." President, Etc., of Louisiana State Bank vs. Gaiennie, 21 La. Ann. 555.

"A bank which credited the amount of a check of the payees and permitted them to draw against it, before it received notice through the clearing house that the check had been dishonored is a holder for value." 47 N. E 196.

"A check received from a person who obtained it unfairly will entitle the party to recover on it if he took it without any knowledge." Allard, et al., vs. Lobau, 2 M. 319; Cross vs. Richardson, 2 M. 326.

The defendants objected to any testimony showing the details of the transaction on the ground that it tended to contradict the endorsement on the check which stated that it was left with the bank "for deposit". The testimony did not contradict the endorsement. It established that the plaintiff had advanced or paid to Hurst the amount of the check which had then been left with it for deposit and collection. Far from being inconsistent, one was a corallary of the other in transactions of that kind.

But the rule appealed to applies only to the parties to the contract. The defendants were not parties to the agreement between Hurst and the bank. No. 7971 Ct. App.

Defendant also contends that plaintiff was not a holder in due course for the reason that the time that elapsed between the date of the check, August 4th, and the date it was cashed by the plaintiff, August 10th, was so long that it should have aroused the suspicions of the plaintiff and put it on guard, and that consequently it was not a holder in good faith without notice.

No authorities whatever are quoted by the defendants in support of their proposition.

The check was dated New Orleans; it was mailed to Hurst at Hammond; Hurst was running a sawmill eight miles out of Hammond; he could not have received it prior to August 5th. There is no evidence to show when he received it. Five days, therefore, intervened between the time he received the check and the date upon which he procured the money from the plaintiffs.

In Saloy vs. Bank, 39 La. Ann. 93, the court adopting the language in Fairex vs. Beer, 37 La. Ann. 821, said: "The transferee for value of negotiable securities not due, from the possessor and apparent owner, gets a title which cannot be defeated without proof of actual or constructive motive of the imperfect title of the transferor amounting to *mala fides.*"

The delay, therefore, between the date of the check and the date of its transfer must be such as to amount to "constructive notice" against which it would be *"mala fides"*, or bad faith for the transferee to close his eyes.

The Negotiable Instruments Act makes the provisions of the Act applicable to a Bill of Exchange payable on demand apply to a check. Sec. 185, p. 173.

Sec. 53 says: "Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course."

What is an unreasonable time is answered in Sec. 193:

"In determining what is a 'reasonable time' or an 'unreasonable time' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case." 8 C. J. 408.

"A check. is not overdue for the purposes of transfer, unless there has been unreasonable delay in presenting it. One who takes it without notice of equities or defenses within a reasonable time after its date or delivery is a bona fide holder. Ordinarily. one day, or even several days, is not an unreasonable time, but a delay of several weeks or months is unreasonable." 8 C. J. 413.

The holder of a check though taken some days after its date, takes it free from all equities. 8 Bush (Ky.) 357.

A check drawn on Christmas' eve does not become stale in six days so as to put the bank on inquiry. 56 S. C. 320.

A check dated New York, June 1st, transmitted to Kansas and arriving there on June 8th is not overdue to such an extent as to put a purchaser on inquiry. 180 N. Y. 346.

"The rule is, that the fact that the holder has taken a check from the payee four days, or even more, after its date, unconnected with other suspicious circumstances, does not subject him to equitable defenses in an action by him against the drawer." 177 Ind. 240-252; 5 R. C. L. 536.

There is not the least suspicious circumstance connnected with the transfer of this check by Hurst to the plaintiff bank. The only fault attributed to Hurst was a tendency to overdraw his account; otherwise his reputation at the time was good..

But his overdrawing did not impugn his honesty and was not calculated to make the plaintiff believe that the amount of the check was not justly due to Hurst.

We see no merit in the defense, in law or in fact, and the judgment is therefore affirmed.

WESTERFIELD, J. I agree with my colleague in this conclusion of law, but differ in my appreciation of the facts. The bank advanced nothing on the check of defendant but on the personal check of Hurst. It was therefore .not a holder in due course. For these reasons I respectfully dissent.