JANVIER, Judge.
The essential facts from which this litigation results are not in dispute.
Metairie Savings Bank & Trust Company is an incorporated banking institution doing business in the Parish of Jefferson, in this State.
Harris Finance Corporation is engaged in business in New Orleans. It had a checking account with the Progressive Bank & Trust Company in New Orleans. On September 28, 1950, after banking hours, Harris Finance Corporation issued its check, drawn on Progressive Bank & Trust Company and payable to the order of Frank Paul for $1,450. This check was issued by the Finance corporation on the request of Jules M. Ripp in payment to Frank Paul for an automobile which Ripp was purchasing from Paul to whose order this check was payable. On that same day, several hours after the check had been issued by Harris Finance Corporation, Ripp became suspicious that the automobile that he had purchased from Paul was a stolen car, and early on the next morning at his request, Harris Finance Corporation issued to Progressive Bank & Trust Company an order to stop payment of the check which had been issued to Paul. No notice of this order to stop payment was communicated to Metairie Savings Bank & Trust Company since, of course, neither Harris Finance Corporation nor Progressive Bank & Trust Company had any intimation that the check would find its way to and be honored by the Metairie Savings Bank & Trust Company.
On the morning of September 29, 1950, the day after the check had been issued, Paul appeared at the Metairie Savings Bank & Trust Company and, having identified himself to the satisfaction of one of the clerks of that institution, presented the check, endorsed it, and requested that it be “cashed”. No official or employee of Me-tairie Savings Bank & Trust Company attempted to communicate with Progressive Bank & Trust Company in an effort to ascertain whether the check was “good” and Paul was paid the full face amount of the check, to-wit the sum of $1,450.
It' developed that the automobile, in payment for which the check had been issued to Paul, was in fact a stolen car and Ripp was required to surrender it to the police authorities.
Metairie Savings Bank & Trust Company, in the usual course of business, “cleared” the check through its New Orleans correspondent, but Progressive Bank & Trust Company refused to honor the check, returning it with the notation that payment had been stopped. Accordingly, Metairie Savings Bank & Trust Company brought this suit against Plarris Finance Corporation for the face amount of the check.
Harris Finance Corporation answered, admitting the issuance of the check, but ■denying liability to Metairie Savings Bank & Trust Company on two grounds. First, it averred that if the Metairie Savings Bank & Trust Company did “take” the said check, it did not become the holder in due course but took it merely as the agent for the payee, and in the alternative and as a second defense, Harris Finance Corporation alleged that “its procedure in handling the said check constituted such gross negligence as to constitute bad faith.”
Harris Finance Corporation then called Ripp in warranty and Ripp answered admitting his responsibility to Harris Finance Corporation in the event the said corporation should be held liable, and praying for judgment in warranty against Paul for such amount as he might be held liable for to Harris Finance Corporation.
There was judgment for plaintiff as prayed -for against Harris Finance Corporation and in favor of Harris Finance Corporation in warranty against Jules M. Ripp, and in favor of Ripp in warranty against Frank Paul. Harris Finance Corporation has appealed suspensively from that judgment.
Defendant .presents two contentions, as stated in counsel’s brief:
“I.
“That the transaction is one not covered by the negotiable instrument statute, but by the law merchant, and ac *149 cordingly, plaintiff 'has no greater rights than its endorser Frank Paul, as to whom failure of consideration is unquestioned.
“II.
“Even if the transaction is held to come under the negotiable instruments law, all the circumstances .surrounding the handling -of the check evidence such gross' negligence on the part of plaintiff as to constitute bad faith, thus removing plaintiff from the category of a holder in due course, and accordingly, subject to the defense of failure of consideration.”
Just why the transaction is not within the contemplation of our Negotiable Instruments Law counsel for defendant fails to state.
In Section 30 of Louisiana Statutes Annotated-Revised Statutes, Title 7, Negotiable Instruments Law, it is provided that:
“An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery.”
In section 52, it is provided that:
“A holder in due course is a holder who has taken the instrument under the following conditions:
“(1) That it is complete and regular upon its face;
“(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;
“(3) That he took it in good faith and for value;
“(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.”
Counsel for both parties cite many cases in support of their divergent views on this subject, but we find that in Hammond State Bank v. Perrin and Pierrepont, 1 La.App. 108, we ourselves considered the identical legal question which is here presented and we held that the situation was controlled by the Negotiable Instruments Law, the wording of which was then found in Act No. 64 of 1904, and which wording was identical with that which we have quoted from Louisiana Statutes Annotated-Revised Statutes.
In that case the Bank- to which the check was presented permitted it to be deposited to the account of the payee and then permitted the payee to draw against it. We held that the transaction was within the control of the Negotiable Instruments Law and that the Bank which had given credit to its customer on the check could recover against the drawer of the check. We said:
“It is not necessary, in order to be a holder in due course, that one should have acquired the instrument ‘as owner’. Any holder having advanced money on the faith of the instrument as purchaser, pledgee or creditor, or who has otherwise acquired rights to or upon the instrument, is ‘a holder in due course.’ ”
In that case Judge Westerfield, then one of the judges of this court, dissented on the ground that the plaintiff bank did not become the holder of the check, for the reason that the person who had presented the check to the bank had not “cashed” it but, being a customer of the bank, had deposited it to his credit and had then drawn his own check against his account. If, in such a case as that, it was held 'that the bank became a holder in due course and for value, surely we must hold that, where the bank to which the check is presented does not accept it for deposit but delivers the cash directly to the payee of the check on his endorsement, the bank becomes the holder in due course and for value.
In that case the Supreme Court refused to issue a writ of certiorari.
In Bank of Fort Mill v. Rollins, 217 S.C. 464, 61 S.E.2d 41, the Supreme Court of South Carolina considered a -case which, on its facts, is identical with the case at *150 bar. The Court, applying the Uniform Negotiable Instruments Law, held that the bank which had cashed the check had become the holder for value and in due course.
Counsel for defendant, Harris Finance Corporation, argues that if it be held that, under such facts as are found here, the bank which cashed the check became the holder for value, then the person who presented the check and secured the cash was placed in a preferential position over a customer of the bank who might have deposited such a check to his credit, for the reason that where a customer deposits a check to his account he does so under the agreement that if, for any reason, the check is not honored by the drawee bank, it may be charged back against the customer who deposited it.
In the first place, it must be noted that in the Hammond State Bank case, it was a customer of the bank who had deposited and not cashed the check, and yet we held —with the subsequent approval of the Supreme Court — that the bank had become the holder in due course.
In the second place, we do not think that Paul, who cashed the check in the case at bar at the plaintiff bank, was placed in a better position than that in which he would have been had he been a customer of the bank and had he, as a customer, deposited the check to his credit and then drawn against his account. In either case, as the payee and endorser, the bank which cashed the check for him in the one case, or allowed him to draw against it in the other case, could have held him liable when the check was dishonored by the drawee bank.
In any event we think it well settled that, under such facts as are found here, the bank which cashes such a check becomes the holder in due course and for value unless, of course, in the conduct of the transaction the cashing of the check resulted from gross negligence, or was permitted when the cashing bank had such knowledge of the infirmity of the check as to amount to bad faith. And this makes it necessary that we consider the alternative defense, that there was such gross negligence exhibited by the plaintiff bank as to indicate that it cashed the check in bad faith.
Counsel for defendant concedes that this defense cannot be successful unless it appears that the negligence was so “gross” as to indicate that there was bad faith and, of course, such a concession was unnecessary, for an examination of the Negotiable Instruments Law itself indicates, to use the word of the immortal bard, that it is so “nominated” in the statute itself. See section 56.
It is contended that the negligence of the plaintiff bank consisted in cashing so large a check without first communicating with the drawee bank to ascertain whether the check was good. The record shows that the plaintiff bank had cashed other checks issued by Harris Finance Corporation and that it had sufficient knowledge of the financial standing of that corporation to justify its belief that the check would be honored by the drawee 'bank.
The record shows further that the plaintiff bank satisfied itself that the payee named in the check was the person who actually presented it and who actually endorsed it. If there had been any mistake in this regard, or if there had been forged endorsements, or if the check had been presented by someone who represented ■himself to be the payee and was not actually the payee, then possibly the negligence of the bank could be said to have been responsible for the loss. But it is conceded that the check was good, that the endorsement was genuine, and that the only reason for the stopping of the check was the fear that the automobile, for the purchase of which it had been given, was a stolen car. There was no reason in the world for the plaintiff bank to have any suspicion in this regard. It did all that we think the ordinarily prudent bank would have done. It satisfied itself by its knowledge of the standing of the Harris Finance Corporation that its check would be good, and it satisfied itself that the payee was the person who presented it and that his endorsement was genuine.
*151 There is a little conflict in evidence as to whether it is customary for banks in this locality to cash such checks, but the record convinces us that it is customary, where the bank to which the check is presented, has knowledge of the financial standing of the drawer of the check and is satisfied with the genuineness of the endorsement of the payee.
It is argued that there was negligence in not investigating further, for the reason that the address given by the payee of the check showed that he lived nearer to the bank against which the check had been drawn than to the plaintiff bank which cashed it for him. If this constituted such negligence as to indicate that the plaintiff bank was in bad faith and therefore could not be held to be the holder in due course, then the whole purpose to be served by these features of the Negotiable Instruments Law would be defeated. Such an instrument would no longer be considered a negotiable instrument. If, in any case in which a check on another bank is presented, the bank to whom it is presented must make a full and complete investigation on every incidental fact from which the instrument may have resulted, no longer would any useful purpose be served by this provision of the Negotiable Instruments Law.
We cannot treat seriously the contention that there was undue delay in the presentation of the check and that this should, have put the plaintiff bank on notice that there might be some infirmity in it. It was presented and cashed on the morning of the day following its issuance. Surely it could not have- been presented sooner. In Hammond State Bank v. Per-rin and Pierrepont, supra, six days intervened between the day on which the check was issued and the day on which it was presented.
Our conclusion is that the plaintiff bank was the holder in due course and"for value; that it was not in bad faith, and that no negligence was exhibited in the cashing of the check.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.